**No. 1:22-cr-00033-DDD-GPG**
**ORAL ARGUMENT REQUESTED**

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

United States of America,

*Plaintiff-Appellee*,

v.

David Lesh,

*Defendant-Appellant.*

**On Appeal from the United States Magistrate Court for the District of Colorado**
**Magistrate Judge Gordon P. Gallagher**
**No. 20-po-07016**

**DEFENDANT-APPELLANT'S OPENING BRIEF**

Jenin Younes
NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street NW, Suite 450
Washington, DC 20036
202-869-5210
Jenin.Younes@ncla.legal

*Counsel for Defendant-Appellant*

August 23, 2022

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................... iii

JURISDICTIONAL STATEMENT ................................................................................ 1

STATEMENT OF THE ISSUES .................................................................................... 1

STATEMENT OF THE CASE ........................................................................................ 1

STATEMENT OF FACTS .............................................................................................. 2

    I.    Pretrial Proceedings ............................................................................................ 2

    II.   The Trial ............................................................................................................. 3

        A.   The Government's Case ...................................................................... 3

        B.   The Court's Admission of Evidence of Other Charges and Bad Acts ......................... 4

        C.   The Court's Admission of *The New Yorker* Article .................................. 5

        D.   The Motion for Judgment of Acquittal and Defense's Case............................... 7

        E.   Defense Counsel's Summation ......................................................... 7

        F.   The Court's Verdict and Sentencing ................................................. 8

SUMMARY OF ARGUMENT ....................................................................................... 9

STANDARD OF REVIEW ............................................................................................ 10

ARGUMENT ................................................................................................................. 11

    I.    THE GOVERNMENT FAILED TO PROVE APPELLANT'S GUILT OF BOTH COUNTS BEYOND A REASONABLE DOUBT ....................................................................................... 11

        A.   The Government Did Not Provide Legally Sufficient Evidence that Appellant Operated a Snowmobile off a Designated Route ................................................................ 11

        B.   The Government Did Not Prove that Appellant Sold or Offered for Sale Merchandise, or Conducted Work Activity, on Federal Land ........................................................ 14

    II.   THE COURT COMMITTED REVERSIBLE ERROR BY PERMITTING HEARSAY BE ENTERED INTO EVIDENCE, IN THE FORM OF A MAGAZINE ARTICLE…………………………………....20

    III.  THE COURT'S ADMISSION OF OTHER BAD ACTS INVOLVING HANGING LAKE AND MAROON LAKE GRAVELY PREJUDICED APPELLANT AND REQUIRES REVERSAL OF HIS CONVICTION ............................................................................................. 24

    IV.  APPELLANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO A JURY TRIAL IN THIS CRIMINAL CASE ............................................................................................. 28

CONCLUSION ............................................................................................................. 31

CERTIFICATE OF COMPLIANCE............................................................................. 32

CERTIFICATE OF SERVICE ................................................................................................ 33

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
141 S. Ct. 2485 (2021) ............................................................................................ 16

*American Civil Liberties Union of Nevada v. City of Las Vegas*,
13 F.Supp.2d 1064 (D. Nev. 1998) ......................................................................... 21

*Asgrow Seed Co. v. Winterboer*,
513 U.S. 179 (1995) ................................................................................................. 14

*Ashcroft v. Free Speech Coalition*,
535 U.S. 234 (2002) ................................................................................................. 18

*Bartnicki v. Vopper*,
532 U.S. 514 (2001) ................................................................................................. 18

*Bouie v. Columbia*,
378 U.S. 347 (1964) ................................................................................................. 18

*Bowdry v. United States Airlines, Inc.*,
58 F.3d 1483 (10th Cir. 1995) ................................................................................. 10

*Chapman v. California*,
386 U.S. 18 (1967) ................................................................................................... 25

*Duncan v. State of La.*,
391 U.S. 145 (1968) ................................................................................................. 29

*FCC v. Pacifica Foundation*,
438 U.S. 726 (1978) ................................................................................................. 18

*Green v. Baca*,
226 F.R.D. 624 (C.D. Ca. 2005) ............................................................................. 21

*Greer v.United States*,
141 S.Ct. 2090 (2021) .............................................................................................. 24

*Gundy v. United States*,
139 S. Ct. 2116 (2019) ............................................................................................. 17

*Huddleston v. United States*,
485 U.S. 681 (1988) ................................................................................................. 26

*In re Columbia Securities Litigation,*
   155 F.R.D. 466 (S.D.N.Y. 1994) ........................................................................ 21

*Jackson v. Virginia,*
   443 U.S. 307 (1979) ................................................................................... 9, 11

*Larez v. City of Los Angeles,*
   946 F.2d 630 (9th Cir. 1991) ............................................................................ 21

*Lewis v. United States,*
   518 U.S. 322 (1996) .................................................................................. 30, 31

*Liberty Mut. Fire Ins. Co. v. Woolman,*
   913 F.3d 977 (10th Cir. 2019) .......................................................................... 10

*May v. Cooperman,*
   780 F.2d 240 (3d Cir. 1985) ............................................................................. 21

*Michelson v. United States,*
   335 U.S. 469 (1948) ..................................................................................... 25

*Miles v. Ramsey,*
   31 F.Supp.2d 869 (D. Colo. 1998) ..................................................................... 22

*New England Mut. Life. Ins. Co. v. Anderson,*
   888 F.2d 646 (10th Cir. 1989) ...................................................................... 21, 23

*NFIB v. OSHA,*
   142 S. Ct. 661 (2022) .................................................................................... 16

*Nooner v. Norris,*
   594 F.3d 592 (8th Cir. 2010) ............................................................................ 21

*Old Chief v. United States,*
   519 U.S. 172 (1997) .............................................................................. 26, 27, 28

*Price v. Barr,*
   514 F.Supp.3d 171 (D.D.C. 2021) ...................................................................... 17

*Price v. Rochford,*
   947 F.2d 829 (7th Cir. 1991) ............................................................................ 23

*U.S. v. Rufai,*
   732 F.3d 1175 (10th Cir. 2013) ......................................................................... 10

*United States v. Atkinson,*
   990 F.2d 501 (9th Cir. 1993) ............................................................................ 20

iv

*United States v. Bartels*,
    No. F053881, 1998 WL 289231 (D. Colo. 1998) ................................................................. 7, 15

*United States v. Beasley*,
    184 F.Supp.3d 950 (D. Oregon 2016) .................................................................................. 14

*United States v. Commanche*,
    577 F.3d 1261 (10th Cir. 2009) ...................................................................................... 25, 26

*United States v. Gutierrez de Lopez*,
    761 F.3d 1123 (10th Cir. 2014) .......................................................................................... 11

*United States v. Harriss*,
    347 U.S. 612 (1954) ........................................................................................................... 18

*United States v. Haymond*,
    139 S. Ct. 2369 (2019) .................................................................................................. 28, 30

*United States v. Johnson*,
    977 F.2d 1360 (10th Cir. 1992) .......................................................................................... 11

*United States v. Kelly*,
    535 F.3d 1229 (10th Cir. 2008) .......................................................................................... 20

*United States v. Lazcano-Villalobos*,
    175 F.3d 838 (10th Cir. 1999) ...................................................................................... 24, 28

*United States v. Leonard*,
    439 F.3d 648 (10th Cir. 2006) ............................................................................................ 26

*United States v. Lewton*,
    575 Fed. App'x. 751 (9th Cir. 2014 ................................................................................. 7, 16

*United States v. Phillips*,
    475 F.Supp.3d 1271 (D.N.M. 2020) ............................................................................... 25, 28

*United States v. Stevens*,
    559 U.S. 460 (2010) ........................................................................................................... 18

*United States v. Strong*,
    79 F.3d 925 (9th Cir. 1996) ........................................................................................... 15, 19

*United States v. Tome*,
    61 F.3d 1446 (10th Cir. 1995) ............................................................................................ 20

*Vachon v. New Hampshire*,
    414 U.S. 478 (1974) ........................................................................................................... 14

**Statutes**

18 U.S.C. § 3231 ................................................................................................. 1

7 U.S.C. § 1011 .......................................................................................... 16, 17

**Rules**

Fed. R. Crim P. 51 ............................................................................................ 24

Fed. R. Crim. P. 58 ...................................................................................... 1, 30

Fed. R. Evid. 403 ..................................................................... 23, 24, 26, 28

Fed. R. Evid. 404 ............................................................................ 23, 25, 26

Fed. R. Evid. 801 ..................................................................................... 21, 22

*Rules of Procedure for the Trial of Minor Offenses Before United States' Magistrates,*
51 F.R.D. 197, 209 (1971) ....................................................................... 30

**Regulations**

36 C.F.R. § 261.10 ................................................................................... passim

36 C.F.R. § 261.14 ................................................................................... passim

Fed. R. Evid. 902(6) ...................................................................................... 6, 23

**Constitutional Provisions**

U.S. Const. amend. V ...................................................................................... 18

U.S. Const. amend. VI. ................................................................................... 28

U.S. Const. art. III, § 2 .................................................................................. 28

**Other Authorities**

John Berlau, *A Declaration of Independence from the Administrative State?*, Law & Liberty
Blog (July 4, 2022), https://lawliberty.org/a-declaration-of-independence-from-the-
administrative-state/ ..................................................................................... 29

Philip Hamburger, Is ADMINISTRATIVE LAW UNLAWFUL? (2014) ........................................ 29, 30

THE DECLARATION OF INDEPENDENCE para. 20 (U.S. 1776) ...................................................... 29

THE FEDERALIST NO. 83 (Alexander Hamilton) (J.E. Cooke ed., 1961) .......................... 28, 29, 30

vii

# JURISDICTIONAL STATEMENT

This Court has jurisdiction to adjudicate this appeal pursuant to 18 U.S.C. § 3231 and Fed. R. Crim. P. 58(g).

# STATEMENT OF THE ISSUES

I.      The Government Failed to Prove Appellant's Guilt of Both Counts Beyond a Reasonable Doubt.

II.      The Court Committed Reversible Error by Permitting Hearsay to Be Entered into Evidence, in the Form of a Magazine Article.

III.      The Court's Admission of Other Bad Acts Involving Hanging Lake and Maroon Lake Gravely Prejudiced Appellant and Requires Reversal of His Conviction.

IV.      Appellant Was Deprived of His Constitutional Right to a Jury Trial in this Criminal Case.

# STATEMENT OF THE CASE

Appellant, David Lesh, was charged with snowmobiling off a designated route at Keystone Park, in violation of 36 C.F.R. § 261.14, and selling or offering for sale merchandise, or conducting work activity or service without authorization, in violation of 36 C.F.R. § 261.10(c) (Criminal Information, RE 1, 1-1; Superseding Information, RE 53).   The magistrate judge convicted him on both counts, following a bench trial, and sentenced him to six months' probation, 160 hours of community service, and a total fine of $10,000 ($5,000 for each count) (1/12/2022 Sentencing Minutes at 26-28, 31, attached as Exhibit A; Amended Sentencing, RE 115).

1

# STATEMENT OF FACTS

## I.    PRETRIAL PROCEEDINGS

The United States Government first charged Appellant on September 15, 2020, with six counts alleging violations of various United States Forest Service (USFS) regulations.   The first accused him of snowmobiling off a designated route in Keystone Park on April 24, 2020 in violation of 36 C.F.R. § 261.14 (Count 1).   Five additional counts were based on his unlawful entry into Hanging Lake—a protected land—on June 10, 2020 (Counts 2-6) (Criminal Information, RE 1, 1-1).

On October 21, 2020, Appellant posted a photograph to his personal Instagram account that depicted him "defecating in Maroon Lake," and bearing the caption "[a] scenic dump with no one there was worth the wait" (Minutes of Motion Hearing, RE 39).   USFS officers concluded that the photograph may have been inauthentic, and that the Hanging Lake photographs might have been doctored as well (Affidavit of USFS Officer Ben Leach, RE 14-1, p. 506; Leach: 82-83, 110-13, 126-27).[1]

So, the Government filed a superseding information, dropping all five Hanging Lake charges, but retaining the Keystone Park charge (RE 53).   The information added a new count: "On or about April 24, 2020, through October 21, 2020, in the State and District of Colorado, upon lands administered by the United States Forest Service, namely the Keystone Ski Area within the White River National Forest and elsewhere, [Appellant] sold or offered for sale any merchandise or conducted any kind of work activity or service without authorization[,]" citing 36 C.F.R. § 261.10(c) (RE 53).

---

[1]  Unprefixed numbers refer to the minutes of the bench trial, RE 89.

Defense counsel filed motions to dismiss arguing, *inter alia*, a "violation of the nondelegation doctrine" (Motions to Dismiss, RE 66, 67). The court denied both motions (Order, RE 73). At a proceeding on January 11, 2021, defense counsel requested a jury trial, but the court ruled that Appellant was "entitled only to a court trial at this point in time" (Minutes, attached as Exhibit B at p. 2, 4).

## II.   THE TRIAL

### A.   *The Government's Case*

Appellant had been known to USFS since around 2019, as a prominent skier with a large Instagram following who owned a company, Virtika, that sells outdoor gear (Christopher Ingham [Director of Mountain Operations for Keystone]: 20-23; Special Agent Ben Leach: 69-70).

On April 24, 2020, Terrain Park at Keystone was closed to the public because of the Covid-19 pandemic (Ingham: 15-16). Although signs indicated the area was off-limits, people nevertheless sometimes entered it (17-22). Typically, an officer instructed them to leave (20-21). No one reported seeing Appellant on the property that day (52-53).

The following morning, Appellant posted a photograph to his Instagram account that depicted a snowmobiler in the air in Terrain Park, along with the comment "solid park sesh (*sic*), no lift ticket needed" (Ingham: 24-25, 28; Gov. Exs. 1-2). The person's identity cannot be discerned: the face is not visible, and no part of the body is exposed (Ingham: 51-52; Leach: 145; Gov. Exs. 1-3). Nor did any evidence show that Appellant owned the snowmobile or other items in the photograph (Leach: 149-50, 157, 177). While Appellant posted the photograph on April 25, the Government provided no proof of when it had been taken (Leach: 174-75). There was no brand name on the clothing (Leach: 164-65; Gov. Exs. 1-3). Although Virtika had its own social media accounts, Appellant had not posted the photograph to them, nor was Virtika mentioned or

3

tagged in his Instagram post (Leach: 163-65).

Having been alerted to Appellant's photo, Ingham went to Terrain Park the morning of April 25 and saw snowmobile tracks (Ingham: 30-34), which appeared fresh to Leach based on photos (Leach: 62-64, 136-37; Gov. Exs. 4-8).   Ingham acknowledged the tracks could have been created before April 24 (51).   There was no way to tie the tracks to a specific snowmobile or brand (Ingham: 50-51).   To Ingham's knowledge, no one had used any of the 25 snowmobiles to which USFS officers have access (32, 50).

### B. The Court's Admission of Evidence of Other Charges and Bad Acts

The prosecutor began to question Leach about the Hanging and Maroon Lake photographs Appellant had posted to his personal Instagram account on June 10 and October 21, 2020, respectively, claiming that they were pertinent to proving a violation of Count 2 (selling merchandise or conducting work activity) (70, 76).   Defense counsel objected, arguing that the material was irrelevant and inadmissible under Federal Rule of Evidence 404(b) (70-72, 75-76).   Rather, he explained, this was a "backdoor" attempt to introduce proof of other bad acts (70-72).   The court overruled defense counsel's objection, deeming the evidence *res gestae* (72, 76).

Despite not believing the Maroon Lake photograph to be authentic, the prosecutor nevertheless sought its admission "to show [Appellant] is continuing to promote his business with photographs, *whether doctored or not*, of National Forest lands" (78-80) (emphasis added).   Defense counsel objected, pointing out that a violation of 36 C.F.R. § 261.14 could only be established if the promotion activity "happen[ed] upon lands administered by" USFS (80).   The court overruled the objection and permitted the prosecutor to introduce the photograph into evidence (81).

Leach then testified that initially prosecutors filed a six-count information against Appellant on September 15, 2020, including charges pertaining to his supposed trespass of

Hanging Lake (74).   On cross-examination, Leach acknowledged that any social media influencer who posted a photo on USFS land and profited could be considered to have conducted work activity on those lands within the meaning of the regulation in question (122-24).   The agent conceded that, to his knowledge, no specific sales resulted from Appellant posting the Keystone photo, and he had no evidence that Virtika's revenue increased afterward (165-67).

### C.   The Court's Admission of The New Yorker Article

The Government sought to introduce into evidence an approximately 15-page *New Yorker* profile of Appellant entitled "Trolling the Great Outdoors," with the byline "As the wilderness gets overrun, the most hated man in the Rockies finds an audience of emulators and antagonists," published on January 18, 2021 (83; Gov. Ex. 9).   The prosecutor also announced he was introducing a 56-minute video podcast interview of Appellant in which he had stated that "everything in that article is true, it was fair" (85).

Defense counsel objected to both, arguing that the article contained several layers of hearsay as the journalist, Nick Paumgarten, had not been called to testify.   Furthermore, the piece was replete with irrelevant, personal and prejudicial information, as well as the author's observations and impressions of Appellant, making it inadmissible under Federal Rules of Evidence 403 and 404(b) (84-86, 90).

The article delved into Appellant's youthful criminal record and misdeeds, including several minor felonies for reckless motorcycling, as well as calling in a bomb threat in eighth grade (which led to his expulsion from school), and selling marijuana (Gov. Ex. 9).   Paumgarten also discussed more recent alleged wrongdoing: rumors that Appellant crashed a plane on purpose for attention, his arrest for setting fire to a tower of shopping carts, chasing a moose which led to a ticket, and riding a tortoise in Ecuador, prompting an article to be written about him bearing the headline "the worst tourist in the world"   (Gov. Ex. 9). The article also contains numerous

references to behavior that many readers would find offensive or distasteful, including that Appellant attained notoriety by making obscene videos (Gov. Ex. 9).

The court overruled defense counsel's objection, explaining that the entire *New Yorker* article was admissible under Federal Rule of Evidence 902(6), which deems newspapers and periodicals self-authenticating (87). While the whole podcast would be admitted, the court intended only to watch the approximately one-minute relevant segment (92). The video, posted on March 8, 2021, was played in open court (Gov. Ex. 13). In it, Appellant stated: "nothing that [Paumgarten] said was untrue or unfair, but it only captures one … aspect of me or one part of my life … it's relatively one-sided" (Gov. Ex. 13).

The prosecutor elicited from Leach that the *New Yorker* article stated that Appellant had "posted a couple of photos *of him* snowmobiling off a jump in a closed terrain park at the Keystone Ski area" (94; Gov. Ex. 9) (emphasis added). Defense counsel renewed his objection that this was hearsay (94). When the prosecutor argued that Appellant had adopted the entire *New Yorker* article through his statement on the podcast, defense counsel retorted that a "flippant remark" did not amount to a concession that "everything in the New Yorker article is true" (96-97).

With respect to the paragraph in the article about Appellant posting photos of himself, the court acknowledged that:

> it isn't clear whether [Appellant] later said that it was true or not … That could have been research that the author came up with. It could have been something that [Appellant] told the author during the course of the interview …. I can't find, based off the information that I have at this point, that [Appellant] actually said that (99).

After a brief recess, the court reversed itself, declaring that Appellant had "manifested an adoption or belief in the truth of the statements set forth in the article" (103).

Leach also testified that, according to the article, Appellant said that the Hanging and Maroon Lake photos were fake (107). The author, Paumgarten, had written that "Appellant

declined to reveal Virtika's annual sales, though he claimed they were up 30 percent since he posted the photo at Hanging Lake" (108).   The court overruled defense counsel's objection that the remark was irrelevant and thereby inadmissible because, *inter alia*, fake photos did not establish Appellant had conducted activity *upon lands* administered by USFS (109-10).

### D.   The Motion for Judgment of Acquittal and Defense's Case

Defense counsel filed a motion for judgment of acquittal (MJA), contending the Government had entirely failed to prove an element of § 261.14, which requires off-limits areas to be identified on an over snow vehicle use map available to the public (195-97).   Moreover, the Government did not prove Appellant had been at Keystone Resort on April 24, 2020, or the date of the photograph purporting to show him there (197).   Finally, no evidence established that Appellant sold or offered for sale any merchandise on federal lands under § 261.10(c) (198).   The prosecutor countered, *inter alia*, that whether or not Appellant had been to either lake, he "used the images … to promote his business," a work activity (200).

The court denied the defense motion, stating the signage compensated for absence of a map, and the photos, the *New Yorker* article, and the video combined allowed the Government to proceed on Count 2 (204-06).   Relying on *United States v. Bartels*, No. F053881, 1998 WL 289231 (D. Colo. 1998) and *United States v. Lewton*, 575 Fed. App'x. 751 (9th Cir. 2014), the court held that Appellant's Instagram posts on USFS land constituted a "business model" and thereby violated § 261.10(c) (205).

Two friends testified for Appellant that he had at times posted photographs of other people snowmobiling to his Instagram account (James Emme: 218-19; B. Devine: 222-23).

### E.   Defense Counsel's Summation

Defense counsel reiterated in summation his MJA arguments about the insufficiency of the evidence (228-32).   He added that permitting prosecution of influencers on social media who "do

a post that doesn't even reference their business, that can still trigger federal prosecution and a federal offense … is unconscionable.   There are First Amendment concerns" (237-39).   Counsel also pointed out the remark the *New Yorker* attributed to Appellant, about his sales increasing 30 percent, was actually about the Hanging Lake photographs, which charges were dropped (237-38). Explaining that Lesh was "a provocateur," counsel concluded "the Government is using a twisted construction of that statute to try and pin something on [Appellant]…because they just don't like him" (238-39).

### F.   The Court's Verdict and Sentencing

The court found Appellant guilty on both counts (Memorandum of Decision and Order ("Order"), RE 90 at p. 1).   On Count 1, the court stated Appellant had manifested belief in the truth of the *New Yorker* article's statements by virtue of his podcast remark (*id.*).   The journalist's written statement that Appellant "posted a couple of photos of him snowmobiling" and a direct quote in the article in which Appellant stated "[h]ere I am—or supposedly me—with one misdemeanor, in a terrain park, and everyone goes nuts.   It's absolutely ridiculous," along with the evidence of snowmobile tracks in Terrain Park, sufficed to establish his presence on April 24, 2020 (*id.* at p. 9).

Turning to Count 2, the court referenced another *New Yorker* quote attributed to Appellant: "I wanted them to charge me with something.   The only evidence they have is the photos I posted on Instagram, which I know are fake, because I faked them.   I was pissed off about them charging me for snowmobiling on Independence Pass with zero evidence" (*id.* at 10).   According to the court, Appellant had embarked on an "advertisement and marketing campaign," beginning with the Keystone photos, and evidenced by his statement that negative publicity allowed him to reach a whole new group of people "while really solidifying the customer base we already had," and that since he posted the Hanging Lake photo his sales went up 30 percent (*id.* at 11).   This campaign

"relied upon social media trolling as a way to stir up controversy and free press while using NFS lands," and the Hanging and Maroon Lake posts were deemed further evidence of motive, opportunity, and intent (*id.*).

The court sentenced Appellant to $5,000 plus a special assessment fee of $25 for each count (a total fine of $10,050), and 160 hours of community service plus six months' unsupervised probation. The sentence was stayed pending conclusion of appellate litigation (Exhibit A at 26-28, 31; Amended Sentencing, RE 115).

## SUMMARY OF ARGUMENT

This case presents a classic example of Government overreach.   Because authorities considered Appellant a troublemaker, they repeatedly tried to charge him with various offenses that would not stick.   The convictions here are fatally flawed, too.

First, Appellant was charged and convicted for ostensibly driving a snowmobile off a designated route.   But the snowmobiler in the photograph that served as the basis for the charges and conviction could not be identified.   Snowmobile tracks in the area, which the court deemed persuasive evidence of Appellant's guilt, could not be tied to any individual or vehicle, and Appellant's alleged remark to the *New Yorker* that he posted a photograph of *him* snowmobiling was unreliable for myriad reasons, including being double hearsay.   Second, contrary to the court's holding, that the *New Yorker* reported Appellant claimed his sales rose 30 percent after posting a *different* photograph on Instagram did not establish Appellant sold merchandise or conducted work activity *upon* federal land, as the regulation requires.   In sum, the evidence adduced was legally insufficient to convict Appellant of either count, requiring vacatur of his convictions.   *See Jackson v. Virginia*, 443 U.S. 307, 315 (1979) (due process protects a defendant in a criminal case against conviction "except upon proof beyond a reasonable doubt of every fact

9

necessary to constitute the crime with which he is charged."). Interpreting the regulation prohibiting sale of merchandise and work activity on USFS land to encompass the conduct here—posting a photograph on Instagram—cannot comport with Appellant's First Amendment and Due Process rights. Nor did Congress endow USFS with authority to so interpret the statute, which raises nondelegation questions. Thus, this conviction presents grave constitutional concerns.

Moreover, two serious evidentiary errors require reversal of Appellant's convictions. First, the court erroneously allowed the prosecutor to introduce the *New Yorker* article into evidence, which was not only quintessential hearsay, but replete with prejudicial information that had no bearing on the charges. Second, the court admitted evidence that Appellant had been charged with five counts that the Government ultimately dropped, and a photograph depicting him appearing to defecate in a protected lake. Both the *New Yorker* article and other bad acts evidence served as grounds for the court's guilty verdict, as its written order explicitly stated.

The court also deprived Appellant of his constitutional right to trial by jury in a criminal case. All of the above issues were amply preserved for appellate review by defense counsel's request for a jury trial, repeated objections to the court's adverse rulings, and the MJA. None may be deemed harmless.

## STANDARD OF REVIEW

Determinations as to the sufficiency of evidence are *de novo*: the reviewing court asks whether the trier of fact could find legally sufficient evidence of each element of a crime beyond a reasonable doubt. *See U.S. v. Rufai*, 732 F.3d 1175, 1189 (10th Cir. 2013). Entitlement to a jury trial is also a question of law to be reviewed *de novo*. *See Liberty Mut. Fire Ins. Co. v. Woolman*, 913 F.3d 977, 991, n. 14 (10th Cir. 2019); *Bowdry v. United States Airlines, Inc.*, 58 F.3d 1483, 1489 (10th Cir. 1995).

A trial court's evidentiary rulings, on the other hand—including admission of hearsay and other offenses and bad acts—are reviewed for an abuse of discretion. *See United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1132 (10th Cir. 2014); *United States v. Johnson*, 977 F.2d 1360, 1367 (10th Cir. 1992).

# ARGUMENT

## I. THE GOVERNMENT FAILED TO PROVE APPELLANT'S GUILT OF BOTH COUNTS BEYOND A REASONABLE DOUBT

### A.   The Government Did Not Provide Legally Sufficient Evidence that Appellant Operated a Snowmobile off a Designated Route

Appellant was charged and convicted for ostensibly driving a snowmobile off a designated route.   The so-called proof of guilt came in the form of a photograph that Appellant had posted to Instagram depicting an unidentifiable person on an unknown date, snowmobile tracks in the area that could not be tied to any individual, snowmobile, or date, and Appellant's alleged remark in a *New Yorker* article that he sought to provoke authorities by posting a photograph of *him* snowmobiling.   Admissibility issues aside, given that this was hearsay (*see infra*, Point II), the statement could hardly be taken at face value for myriad reasons, including that the comment itself suggested the significant possibility that the photo did not actually depict him, but rather that he was attempting to irritate the Government by posting it.   Furthermore, the Government provided not an iota of proof for one of element, specifically that the over-snow designations be made available to the public.   For these reasons, the Government did not provide constitutionally adequate proof of Appellant's guilt, and his conviction must be vacated.   *See Jackson*, 443 U.S. at 315 (*quoting In re Winship*, 397 U.S. 358 (1970)) (holding that due process protects a defendant in a criminal case against conviction "except upon proof beyond a reasonable doubt of every fact

11

necessary to constitute the crime with which he is charged.").

The regulation that Appellant allegedly breached reads:

> After National Forest system roads, National Forest System trails, and areas on National Forest System lands have been designated for over-snow vehicle use pursuant to 36 C.F.R. 212.81 on an administrative unit or a Ranger District of the National Forest System, and these designations have been identified on an over-snow vehicle use map, it is prohibited to possess or operate an over-snow vehicle on National Forest System lands in that administrative unit or Ranger District other than in accordance with those designations.

36 C.F.R. § 261.14.

Initially, there was no evidence that Appellant physically entered the prohibited areas of USFS land at any point, let alone on April 24, 2020.   The individual depicted in the Instagram photo that the Government contended proved he was present on the land in question cannot be identified in any way, as the prosecution's witnesses conceded.   Two witnesses testified for the defense that Appellant had posted photographs of friends snowmobiling on his Instagram page at various points in time, and produced those photographs, demonstrating that he did not only use the account to share photos of himself (218-224).   No evidence established the date on which the supposedly inculpatory photograph was taken.   Though it was posted on April 25, it might well have been taken at a different time, including when the area was open to the public.   Indeed, according to Ingham's testimony, Terrain Park closed because of the pandemic, with the implication that it had been open prior to March of 2020 (15-16).   Thus, if the photo was taken just over a month earlier, whomever it depicted may have lawfully been in the area.

Though the court found persuasive the existence of snowmobile tracks in Terrain Park on the morning of April 25, that cannot be considered evidence of Appellant's guilt.   Even Ingham admitted that no unique characteristics permitted him to draw any conclusion about the brand of vehicle, much less to tie the marks to a specific snowmobile, and that the tracks could have been

created before April 24.

Nor did Appellant's statements, supposedly paraphrased in a *New Yorker* article, prove that he had been snowmobiling in the prohibited area on April 24.   Initially, the article contained significant quantities of double hearsay and never should have been admitted into evidence (*see infra*, Point II).   Regardless, the journalist's rendition of events—that Appellant "decided to poke the bear" by posting "photos of him snowmobiling"—did not establish his presence at Keystone on April 24, 2020.   First, these were the journalist's words, not Appellant's.   That Appellant stated in an offhand manner on a podcast some months after publication that the 15-page article was fair overall hardly establishes that he was conceding every single point the journalist made, including his identity as the person in the photo.   Indeed, the supposed admission hinged on a single word: *him*, one that Appellant easily could have overlooked when reading the lengthy profile.   *See infra,* Point II.

Second, *even if* taken at face value, Appellant did not tell the journalist that the photo was of him snowmobiling *on April 24*, and as discussed, the Government provided no evidence that it was taken on that date.   Third, per the statement itself, as well as another remark attributed to Appellant in the *New Yorker* article ("I wanted them to charge me with something.   The only evidence they have is the photos I posted on Instagram, which I know are fake, because I faked them"), he sought to provoke authorities with altered photos, another reason to consider both the photograph and alleged statement in the article inadequate proof of his presence at Keystone.

Finally, as defense counsel vociferously argued, the Government entirely failed to prove an element of the offense.   According to the regulation, the public must be informed of designations via an over-snow vehicle use map available at the headquarters of the location's administrative unit and on the web. *See* 36 C.F.R. § 261.14(c) (*citing* 36 C.F.R. § 212.81).   Here, the Government submitted no evidence that the designation had been publicized in any form: the

13

prosecutor provided no response whatsoever to defense counsel's contention on this point (195-201). That missing element alone is fatal to the government's case. *See Vachon v. New Hampshire*, 414 U.S. 478, 480 (1974) ("[A] conviction based on a record lacking any relevant evidence as to a crucial element of the offense charged … violate(s) due process.").

B.   *The Government Did Not Prove that Appellant Sold or Offered for Sale Merchandise, or Conducted Work Activity, on Federal Land*

The Government failed to prove that Appellant violated § 261.10(c) under any constitutional, not to mention reasonable, interpretation of the regulation. Posting a photograph to Instagram that may have financially benefited Appellant simply did not meet the requirement that the *sale of merchandise* or *work activity* take place on federal land, regardless of how desperately the Government hoped to twist the meaning of the regulation to criminally prosecute someone it considered a troublemaker.

To prove a violation of § 261.10(c), the prosecution must establish: (1) that the defendant was conducting work activity or service; (2) *on lands encompassed by the regulation*; (3) without a special-use authorization. *United States v. Beasley*, 184 F.Supp.3d 950, 955 (D. Oregon 2016) (*citing United States v. Parker*, 761 F.3d 986. 993 (9th Cir. 2014)) (emphasis added).  Initially, for the myriad reasons discussed *supra*, Point I(A), there was no evidence Appellant was physically present *on land encompassed by the regulation*.  That element of the offense lacking, the conviction must be vacated.

Next, assuming *arguendo* that the Government provided sufficient evidence that Appellant was the person in the photograph, recreational snowmobiling is not selling merchandise or working, as those words are ordinarily used.  *See Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995) ("When terms used in a statute are undefined, we give them their ordinary meaning.") (*citing FDIC v. Meyer*, 510 U.S. 471, 476 (1994)).  Snowmobiling is the only activity that was

even arguably conducted *on lands encompassed by the regulation*. *See United States v. Strong*, 79 F.3d 925, 928-29 (9th Cir. 1996) (the regulation does not "target noncommercial or gratuitous activities."). Snowmobiling *on federal land* does not equate to *selling merchandise* or *working*. *Cf. United States v. Bartels*, No. F053881, 1998 WL 289231 (granting MJA because C.F.R. § 261.10(c) requires that the "activity or service [] be commercial in nature … for money or other consideration.").[2]

To that end, the Government's contention—which the court appeared to accept—that Appellant could appropriately be convicted of this offense merely because his sales allegedly increased after he posted the Hanging Lake photograph (244-45), regardless of whether or not he had ever been physically present on the land, was entirely misguided. First, the prosecution did not provide sufficient evidence that Appellant's sales actually rose 30 percent as a result of posting the photograph (notably, not the photograph underlying the charges here). That component of the Government's case suffered from the same deficiencies as those discussed in *supra*, Part I(A): the claim arose from a journalist's article purporting to paraphrase Appellant's words, but that journalist was not subject to cross-examination. Thus, not only was this inadmissible hearsay, *see infra*, Part II, but no rational trier of fact could conclude that this flippant statement, from an individual who clearly likes to provoke and to impress, should be taken literally. The prosecution's witness conceded that he had no independent evidence that Appellant made any sales through posting these photographs, or that Virtika's revenue increased afterward (Leach: 165-67).

Second, *even if* Appellant's sales happened to go up because he posted the Hanging Lake photograph or due to publicity surrounding his legal entanglements, he could not be penalized for an inadvertent windfall. He never asserted, nor was there any proof, that he had posted the

---

[2] This was one of two cases the court cited in denying Appellant's MJA (205).

photographs *in order to* make a profit.   *Cf. United States v. Lewton*, 575 Fed. App'x. 751 (affirming conviction where defendant had agreed to film a sheep hunt for commercial gain; that he was on the land *and* had an operational contract in place rendered the facts there crucially different).[3]

Finally, *even if* Appellant had posted the photographs hoping to profit from the publicity, he did not *conduct work activity or service* on lands encompassed by the regulation, as discussed earlier.   Permitting the Government to extend the reach of the regulation in this manner runs headfirst into the non-delegation doctrine.   Congress authorized the Secretary of Agriculture "[t]o make such rules and regulations as he deems necessary to prevent trespasses and otherwise regulate the *use and occupancy of property*" held by the U.S. Department of Agriculture.   7 U.S.C. § 1011(f) (emphasis added).   On its face, this was a narrow delegation of authority to the Executive Branch to regulate activities occurring *on* the land.   Here, the Executive attempted to expand that authority to cover activities not contemplated by Congress.   As the Supreme Court recently explained, claims of extraordinarily broad regulatory authority which are not clearly and explicitly supported by the governing statute are not to be lightly accepted.   *See, e.g.*, *Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2489 (2021) ("Even if the text were ambiguous, the sheer scope of the CDC's claimed authority under § 361(a) would counsel against the Government's interpretation.").   And, when the Government claims authority entailing a "significant encroachment into the lives … of a vast number of" people, courts must inquire whether the underlying statute "*plainly* authorizes" such claimed authority.   *NFIB v. OSHA*, 142 S. Ct. 661, 665 (2022) (emphasis added).

---

[3] This was the second case that the magistrate judge misguidedly relied upon in convicting Appellant of this count (205).

16

Here, the Government is attempting to regulate not merely activity occurring on federal lands (*e.g.*, taking of photographs or snowmobiling), but conduct taking place after an individual leaves these lands (*e.g.*, posting photographs on social media and/or using them in promotional materials).   No act of Congress "plainly authorizes" such broad extension of authority.   And any reading of 7 U.S.C. § 1011(f) that would permit the Secretary of Agriculture to regulate activity that might have some tangential impact on "use and occupancy of property" held by the Secretary would violate the requirement that Congress provide an administrative agency with an "intelligible principle" on which to base its regulation—particularly given that Congress must be the one to specify the ambit of laws with criminal penalties.   *See Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (explaining that, if Congress were to grant the Executive Branch "plenary power to determine [an Act's] applicability … and to change her policy for any reason and at any time" it would create a nondelegation question).   Applying this guidance to the present case, § 1011(f) must be construed as having restricted the Secretary's discretion to promulgate limited regulations that concern actual use and/or physical occupation of the land, rather than endowing the Secretary with plenary power to regulate any activity that may, in some marginal way, affect federal lands.

The court's interpretation of the regulation also cannot be squared with Appellant's constitutional rights to free speech and expression and to due process.   Courts are unequivocal that the First Amendment protects both the taking and dissemination of videos and photographs (outside of a few narrow categories, such as child pornography).   *See Price v. Barr*, 514 F.Supp.3d 171 (D.D.C. 2021).   Appellant, like all Americans, has a right to doctor photos and post them to social media for artistic purposes, to stir up controversy, or for any reason at all.   That the photographs appeared to depict a violation of a USFS regulation is neither here nor there, since the Government acknowledged that the Hanging Lake photograph appeared to be altered for comedic or artistic purposes and as discussed extensively, Appellant's guilt of trespassing at

17

Keystone was not proven beyond a reasonable doubt.  *See supra*, Point I(A). *See Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 253 (2002) ("the Court's First Amendment cases draw vital distinctions between words and deeds, between ideas and conduct …. The government may not prohibit speech because it increases the chance an unlawful act will be committed at some indefinite future time.") (internal citations and quotation marks omitted).   Put otherwise, a person may be convicted for unlawful conduct captured in a photograph only insofar as that photograph provides proof that the person engaged in said conduct.  *See Bartnicki v. Vopper*, 532 U.S. 514, 529 (2001) ("The normal method of deterring unlawful conduct is to impose an appropriate punishment on the person who engages it," rather than to suppress speech of otherwise law-abiding people.).   If this Court permits the prosecution (and persecution) of Appellant for posting what even the Government and its witnesses acknowledged was probably a photoshopped image, then artists, social media influencers, advertisers, and any number of people could find themselves facing criminal charges for publicizing provocative material.

Such an approach is irreconcilable with the First Amendment.  *See United States v. Stevens*, 559 U.S. 460 (2010) (statute criminalizing *depictions* of animal cruelty violated the First Amendment); *FCC v. Pacifica Foundation*, 438 U.S. 726, 745 (1978) ("[T]he fact that society may find speech offensive is not a sufficient reason for suppressing it."). It is also irreconcilable with fundamental principles undergirding a free society, including due process.  *See* U.S. Const. amend. V.   The Supreme Court has long recognized "[t]he basic principle that a criminal statute must give fair warning of the conduct that makes it a crime[.]"  *Bouie v. Columbia*, 378 U.S. 347, 350-51 (1964) (application of trespassing statute prohibiting entry on lands after notice not to enter, to conduct of defendants who refused request to leave, constituted due process violation).  *See United States v. Harriss*, 347 U.S. 612, 617 (1954) ("The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that

his contemplated conduct is forbidden by the statute.  The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.").

Appellant could not have anticipated that a regulation prohibiting the *sale of merchandise* or *conducting work activity on federal land* would be used to prosecute him for posting a photograph on social media depicting an unidentifiable individual engaged in recreational snowmobiling.  Not only does the plain language of the regulation eschew his conviction on this count, but there was no precedent for this interpretation.  Indeed, the opposite was true: courts have rejected arguments that individuals may be convicted under C.F.R § 261.10(c) for recreational or gratuitous activity.  *See Strong*, 79 F.3d at 928-29 (the regulation does not "target noncommercial or gratuitous activities.").  Accordingly, the conviction violated Appellant's constitutional right to due process of law, yet another reason it must be vacated.

Finally, the record indicates that the Government pursued this prosecution due to personal animus.  First, the Government charged Appellant with various trespassing-related offenses based on the Hanging Lake photographs.  When the Government could not escape the fact that those photographs had been doctored, it adopted its current theory.  While the determination to hold Appellant criminally liable for *something*—regardless of whether he had in fact committed any type of crime—alone is not proof that the evidence was constitutionally deficient, it explains the Government's contortion of 36 C.F.R. § 261.10(c) far beyond any reasonable interpretation, and indeed, any interpretation that comports with its congressionally delegated authority.

* * *

Defense counsel preserved the above claims for appellate review.  In his MJA, counsel argued that an element of 36 C.F.R. § 261.14 was missing, as the Government produced no evidence that the public had the requisite information about the off-limits designation of Keystone

19

Park.   Moreover, there was insufficient evidence that Appellant was at Keystone Resort on April 24, 2020, for the same reasons discussed herein (195-201).   As for § 261.10(c), defense counsel argued that there was no proof that Appellant sold or offered for sale any merchandise on federal lands (198).   *See United States v. Kelly*, 535 F.3d 1229, 1234 (10th Cir. 2008) (MJA preserved issue for appellate review).   Defense counsel further preserved these issues, as well as the First Amendment and due process claims, in his summation (237-38).   *See United States v. Atkinson*, 990 F.2d 501, 503 (9th Cir. 1993) (relaxed preservation rules in a bench trial as the judge acts as both trier of fact and law, and "implicitly rules on the sufficiency of the evidence by rendering a verdict of guilty.").

## I.   THE COURT COMMITTED REVERSIBLE ERROR BY PERMITTING HEARSAY TO BE ENTERED INTO EVIDENCE, IN THE FORM OF A MAGAZINE ARTICLE

The trial court erroneously permitted the prosecutor to introduce into evidence a 15-page *New Yorker* profile of Appellant for the purpose of putting before the court two statements that Appellant allegedly made to the journalist who wrote the story.   According to the article, Appellant decided to "poke the bear" by posting a photograph of "*him* snowmobiling" in a closed terrain park at Keystone (emphasis added) which the court ultimately found established that he had unlawfully operated a snowmobile (Count 1).   The journalist also reported Appellant claimed his sales went up 30 percent after he posted the Hanging Lake photograph on his *personal* Instagram account, which the court considered proof that Appellant sold merchandise or conducted work activity on USFS land (Count 2).   It was entirely improper for the court to allow the article, quintessential double hearsay, into evidence.   Appellant had no opportunity to cross-examine the journalist who wrote it.   The court specifically cited the article as a basis for both convictions, eschewing any argument that this could have been harmless error.   *See United States v. Tome*, 61 F.3d 1446, 1455 (10th Cir. 1995) (reversing conviction because of improper admission of hearsay;

*Larez v. City of Los Angeles*, 946 F.2d 630, 644 (9th Cir. 1991) (reversing conviction in part, because admission of newspaper quotations prejudiced defendant).

Generally, newspaper articles are inadmissible hearsay pursuant to Fed. R. Evid. 801(c). *See Nooner v. Norris*, 594 F.3d 592, 603 (8th Cir. 2010) ("Newspaper articles are 'rank hearsay.'") (*quoting Miller v. Tony & Susan Alamo Found.*, 924 F.2d 143, 147 (8th Cir. 1991)); *Green v. Baca*, 226 F.R.D. 624 (C.D. Ca. 2005).   Even when actual statements quoted in an article constitute non-hearsay, or fall within a hearsay exception, their repetition in the newspaper creates a hearsay problem.   *Id.   See Larez*, 946 F.2d at 642 ("As the reporters never testified nor were subjected to cross-examination, their transcriptions of Gates's statements involve a serious hearsay problem."); *American Civil Liberties Union of Nevada v. City of Las Vegas*, 13 F.Supp.2d 1064, 1070 (D. Nev. 1998) ("because those out-of-court statements published in the newspaper constitute double-hearsay," they were inadmissible).   Thus, courts rarely allow newspaper articles into evidence to prove the truth of statements contained therein.   *See May v. Cooperman*, 780 F.2d 240, 262 n.10 (3d Cir. 1985) (Becker, J., dissenting); *see also id.* at 252 n. 9 (majority agreeing with dissent that the admissibility of certain newspaper reports was a matter of serious doubt).

The *New Yorker* article was improperly admitted for the reasons recounted above.   Nick Paumgarten, who wrote the article and attributed various statements to Appellant, did not testify at trial.   There was, accordingly, no opportunity for the defense to cross-examine him about the accuracy of the statements attributed to Appellant.   Perhaps Paumgarten paraphrased, misunderstood Appellant, or exaggerated to sensationalize the article.   Or maybe the statements had been tweaked by an editor.   *See New England Mut. Life. Ins. Co. v. Anderson*, 888 F.2d 646, 650 (10th Cir. 1989) ("These purported admissions in the article were recounted in statements of a third party reporter, who was unavailable for cross-examination, and the statements were offered to prove the truth of the matters asserted."); *In re Columbia Securities Litigation*, 155 F.R.D. 466

(S.D.N.Y. 1994) ("Unless their author is available for cross-examination, newspaper stories generally will present a blank face that gives little clue as to the reliability of the reporter's perception, memory, narration, or sincerity, and in addition fails to disclose how the article was changed in the editing process.").

Indeed, in *Miles v. Ramsey*, 31 F.Supp.2d 869, 877 (D. Colo. 1998), the court rejected a party's attempt to introduce into evidence a *National Enquirer* article, explaining that:

> This is exactly the type of circumstance in which the hearsay rule must be invoked. The hearsay rules exist in our courts because statements out of court (1) asserted by a person, (2) which assert that another person made a statement—when these statements are offered for the truth of the matter asserted, are inherently unreliable. In this circumstance there is double hearsay because we have (1) an out of court statement asserted by the Enquirer, (2) which asserts that a close source made a statement, (3) who asserts that John Ramsey made a statement. *Taking one person's word that another person made a certain statement and then holding that person accountable for that statement has dangerous pitfalls*. Among them, there is no opportunity to cross-examine the person … the statement is not made under oath; and such statements are often subject to misinterpretation and misreporting (emphasis added).

Contrary to the court's reasoning, Fed. R. Evid. 801(d)(2), which provides for admission of hearsay if offered against a party who has "manifested his adoption or belief in its truth," was not applicable.  That Appellant stated on a podcast some months after publication of the article that it was not untrue or unfair hardly meant that he adopted every single sentence or word contained in it. There was no evidence that he had carefully analyzed each word.  The crucial sentence, which significantly influenced the court's finding of guilt on both counts (Order, RE 90 at p. 9), was Paumgarten's statement that Appellant decided to "poke the bear" by posting "photos of *him* snowmobiling" (emphasis added).  But this was Paumgarten's remark, not Appellant's. When making a very general statement that the *New Yorker* article was not unfair or untrue, Appellant might well have forgotten or never noticed the crucial word—*him*—in that single

sentence.   Likewise, the statement about sales increasing following publication to Instagram of the Hanging Lake photograph—which served as the basis for the court's finding of guilt on Count 2 (RE 90 at p. 11) —could have been mere bravado.   In short, the statements in the article, as well as Appellant's supposed adoption of those comments in the podcast, lacked the indicia of reliability required for double hearsay to be admitted in a criminal trial.

The court also ruled that Fed. R. Evid. 902(6) (87), providing for admission of newspapers without authentication, permitted use of the article at trial.   But that rule has no bearing on hearsay inquiry.   Put otherwise, newspapers and periodicals may be admitted as self-authenticating under Rule 902(6), but if they contain hearsay—as this article indisputably did—that is a separate issue that must be subject to the admissibility analysis conducted above.   *See Price v. Rochford*, 947 F.2d 829, 833 (7th Cir. 1991) (allowing newspaper article into evidence subject to this rule, because "there is no hearsay problem" as it was not offered for the truth of the matter); *New England*, 888 F.2d at 650 (rejecting contention that "newspapers are self-authenticating under Federal Rule of Evidence 902(6) … there is no such doctrine.").

Finally, the article not only constituted hearsay, but it was replete with evidence of other crimes, wrongs, and bad acts, that were extremely prejudicial but not probative.   *See* Part III; Fed. R. Evid. 403; 404(b).   For starters, the byline described Appellant as the "most hated man in the Rockies."   That Appellant chased a moose, rode a turtle, produced obscene videos, set fire to shopping carts, and called a bomb threat into his school in eighth grade had nothing to do with whether or not he snowmobiled off a designated route in April of 2020.   Clearly, the court read the entire article, as it referred to various portions interspersed throughout it when convicting Appellant (RE 90).   Not even a judge could remain uninfluenced by this amount of negative information about a defendant.   Yet the magistrate failed to even conduct a balancing test, as required by 403, warranting this Court's *de novo* review.   *See United States v. Lazcano-Villalobos*,

175 F.3d 838, 847 (10th Cir. 1999) (explicating reviewing court's "authority to conduct a de novo balancing where the trial court failed to make explicit findings to support a Rule 403 ruling.").

Defense counsel amply preserved this issue for appellate review (84-86, 94).   *See* Fed. R. Crim P. 51(b); *Greer v. United States*, 141 S.Ct. 2090, 2096 (2021).   The admission of the article cannot be considered harmless.   This was *not* a technicality: Appellant's purported admissions led the court to conclude that he had snowmobiled on areas closed to the public, and that he had profited from doing so, the basis for finding him guilty on both counts.   Accordingly, Appellant's conviction on both counts must be reversed.

## II.   THE COURT'S ADMISSION OF OTHER BAD ACTS INVOLVING HANGING LAKE AND MAROON LAKE PREJUDICED APPELLANT AND REQUIRES REVERSAL OF HIS CONVICTION

Over defense counsel's objection, the magistrate allowed the prosecutor to introduce evidence that Appellant had been charged with offenses relating to his supposed trespass of Hanging Lake in June of 2020.   The Government dropped those charges after realizing that images Appellant had posted to Instagram had probably been photoshopped.   The court also permitted the prosecutor to enter into evidence a photograph depicting Appellant appearing to defecate in Maroon Lake, posted to Instagram in October 2020, despite the Government's concession that photo, too, likely was doctored.   Accepting the Government's reasoning that the photograph showed that Appellant continued to "promote his business with photographs, whether doctored or not," and deeming the prior charges *res gestae*, the court ruled that the photograph and prior charges were admissible.   But this evidence had no bearing on the questions at hand. Instead, the evidence served only to further prejudice the court against Appellant by portraying him as a nuisance and creator of obscenity.   Nor did the court conduct the appropriate balancing test of the prejudicial versus probative value of the evidence, per Rule 403.   Thus, admission of this evidence at trial constituted an abuse of the court's discretion. Moreover, the court explicitly

24

stated that it relied upon this evidence in reaching its verdict. Thus, the error cannot be deemed harmless. *See Chapman v. California*, 386 U.S. 18 (1967); *United States v. Commanche*, 577 F.3d 1261, 1270 (10th Cir. 2009) (determining that prejudicial evidence of prior convictions was inadmissible, and that the error could not be considered harmless as it had a "substantial impact on the outcome of the trial.").

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1); *see United States v. Phillips*, 475 F.Supp.3d 1271, 1274-75 (D.N.M. 2020). Courts often describe Rule 404(b) as prohibiting a forbidden propensity inference: that the defendant is more likely to have committed the crime charged because he committed other, similar infractions. *See Commanche*, 577 F.3d at 1268 (quoting *United States v. Sanders*, 964 F.2d 295, 298–99 (4th Cir. 1992) ("All that the evidence of the prior conviction of assault could possibly show was [the defendant's] propensity to commit assaults on other prisoners or his general propensity to commit violent crimes. ... This is exactly the kind of propensity inference that Rule 404(b)'s built-in limitation was designed to prevent.")). In banning this kind of propensity evidence, Rule 404(b) codified the common-law, as the Supreme Court explained in *Michelson v. United States*:

> The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge.

335 U.S. 469, 475–76 (1948).

Evidence of other bad acts may be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). But such evidence is admissible "only if it is relevant for a permissible purpose and that relevance does not depend on a defendant likely acting in conformity with an alleged character trait." *Commanche*, 577 F.3d at 1267.

A finding that the evidence in question is being offered for a proper purpose does not end the Rule 404(b) analysis; the party seeking admission also must establish that the probative value is not substantially outweighed by the potential for unfair prejudice. *Huddleston v. United States*, 485 U.S. 681 (1988). As the Supreme Court has explained, "unfair prejudice" means "an undue tendency to suggest decision on an improper basis, commonly though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (citation omitted). *See also United States v. Leonard*, 439 F.3d 648, 652 (10th Cir. 2006) ("Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response … or otherwise tends to affect adversely the jury's attitude toward the defendant … apart from its judgment as to his guilt or innocence of the crime charged."). Such improper grounds for decision "certainly include ... generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act charged (or, worse, as calling for preventive conviction even if he should happen to be innocent momentarily)." *Id.* at 180–81. Determining whether such evidence should be excluded under Rule 403 requires balancing the above-described risk of unfair prejudice with its probative value. *See* Fed. R. Evid. 403. *see also Huddleston*, 485 U.S. at 691–92.

That the Government had charged Appellant with five federal offenses for trespassing at Hanging Lake, and that Appellant had manufactured an image of himself defecating in Maroon Lake, a protected land, clearly were inadmissible. Appellant having photoshopped images of himself at Hanging Lake in June of 2020 and Maroon Lake in October of 2020 had no bearing on

26

whether or not he was present at Keystone Resort and snowmobiling off a designated route on April 24, 2020, the *only* real disputed issues with respect to Count 1.   The evidence was no more relevant to determination of Count 2, alleging that Appellant sold merchandise or conducted work activity on USFS lands without authorization.   As discussed extensively in Point I(B), posting controversial or even obscene photographs on social media that happen to gain attention and possibly increase revenue—inadvertently or not—is *not* a violation of 36 C.F.R. § 261.10(c) and interpreting the regulation in this way cannot be squared with Appellant's First Amendment and Due Process rights.   *See* Point I(B).   Thus, the prosecutor's articulated ground for introducing this evidence—that it showed Appellant "continu[ed] to promote his business with photographs, whether doctored or not, of National Forest lands"—a proposition that the court appeared to accept, was fatally flawed.   The evidence was simply not relevant to proving either charge.

At the same time, as defense counsel rightly objected, the prosecutor used the photograph as a "backdoor" attempt to put propensity evidence before the trier of fact.   Actually, the prosecutor explicitly stated his intent to use the photograph for the prohibited purpose of establishing propensity, as he argued that because Appellant doctored photographs of Maroon Lake to promote his business, he had posted the snowmobiling photograph for that reason, too.[4] Furthermore, there existed no conceivable purpose for using any of this evidence apart from propensity or an attempt to turn the court against him.   *See Old Chief*, 519 U.S. at 182 ("There is … no question that propensity would be an improper basis for conviction").

As the evidence of other bad acts was irrelevant, its prejudicial effect far exceeded its virtually nonexistent probative value.   It served only to impress upon the trier of fact that Appellant had been charged with five federal crimes and sought to provoke authorities by posting

---

[4] To be clear, Appellant is not conceding that he posted the Maroon Lake photograph to promote his business—although he had a constitutional right to do so (*see* Point I(B)).

a doctored photograph of himself defecating in a protected lake.   *See Phillips*, 475 F.Supp.3d at 1276 ("other crimes evidence creates the risk that the jury will convict the defendant not because [he is] guilty of the crimes charged but due to the belief that [he is] a bad person who deserves punishment.") (*citing Old Chief*, 519 U.S. at 181).   Yet the court did not conduct the requisite balancing test, as required by Rule 403.   *See id.* at 1275.   That, too, was an abuse of discretion. *See Lazcano-Villalobos*, 175 F.3d at 847 (failure to conduct Rule 403 balancing test, while admitting prior crimes evidence, constitutes an abuse of discretion).

## III.   APPELLANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO A JURY TRIAL IN THIS CRIMINAL CASE

The Constitution of the United States grants the right to a jury trial for "all crimes," U.S. Const. art. III, § 2, and in "all criminal prosecutions," U.S. Const. amend. VI. Setting forth a "particular mode"—trial by jury— for criminal cases, the Constitution specifies "an obligation to try *all* criminal cases" in that manner.   THE FEDERALIST NO. 83, at 559 (Alexander Hamilton) (J.E. Cooke ed., 1961) (emphasis added).   The Framers "considered the right to trial by jury 'the heart and lungs, the mainspring and the center wheel' of our liberties, without which 'the body must die; the watch must run down; the government must become arbitrary.'"   *United States v. Haymond*, 139 S. Ct. 2369, 2375 (2019) (*quoting* Letter from Clarendon to W. Pym (Jan. 27, 1766), in 1 Papers of John Adams 169 (R. Taylor ed. 1977)).   In support of that end, they "adopted the Sixth Amendment's promise" of a right to a jury trial "[i]n all criminal prosecutions[.]" *Id.* at 2376. Together with the Fifth Amendment, "these pillars of the Bill of Rights ensure that the government must prove to a jury every criminal charge beyond a reasonable doubt[.]" *Id.*

Despite the Constitution's clear edicts, an inexplicable divergence from the right to trial by jury developed for so-called petty offenses based on the theory that such offenses were "exempt from the otherwise comprehensive language of the Sixth Amendment's jury trial provisions"

because they "were tried without juries both in England and in the Colonies[.]" *See Duncan v. State of La.*, 391 U.S. 145, 160 (1968).  But this divergence is untethered from the Framers' understanding of that right.   As constitutional scholar Philip Hamburger has put it "the Supreme Court casually assumes that there was a uniform understanding of [the right to a jury]."   Philip Hamburger, IS ADMINISTRATIVE LAW UNLAWFUL? 244 (2014). At the time of the Founding,

> there were divergent traditions about the extent of the right to a jury in criminal cases: There was the traditional right to a jury in all cases, as guaranteed by the Magna Charta and the common law, but there also was the modified version of the right, as adjusted by the [seventeenth- and eighteenth-century] statutes on petty offenses.

*Id.* The Supreme Court's determination that petty offenses are not subject to the Sixth Amendment's guarantees considers only the existence of petty offense statutes and "takes for granted that the modified right had displaced the previously unrestricted common law right" to a trial by jury for criminal offenses.   *Id.*

Indeed, it is impossible to square the Supreme Court's line of cases denying the right to trial by jury in petty offense prosecutions with Founding-era writings.   Among the Declaration of Independence's bill of grievances, the Founders included an indictment "[f]or depriving us in many cases, of the benefit of Jury trial[.]"   THE DECLARATION OF INDEPENDENCE para. 20 (U.S. 1776).   George Washington decried Britain's transporting colonial offenders into distant venues with no trial by jury "where it is impossible from the nature of the thing that justice can be obtained."   John Berlau, *A Declaration of Independence from the Administrative State?*, Law & Liberty Blog (July 4, 2022), https://lawliberty.org/a-declaration-of-independence-from-the-administrative-state/.   As Hamilton noted, even "friends and adversaries of the [proposed Constitution], if they agree in nothing else, concur at least in the value they set upon the trial by jury[.]"   THE FEDERALIST NO. 83, at 562.   He reasoned that if there was "any difference between them" it "consist[ed]" of how they viewed the right with those in favor of the proposed Constitution

29

"regard[ing] it as a valuable safeguard to liberty" and adversaries of the proposal "represent[ing] it as the very palladium of free government."   *Id.*   Several state constitutions, like the U.S. Constitution, took the approach of requiring juries in "all criminal prosecutions."   P. Hamburger, *supra* at 244.

Similarly, in 1971, Justice Black, joined by Justice Douglas, dissented from the promulgation of what is now Federal Rule of Criminal Procedure 58(E), denying the right to a jury trial for petty offenses, because "[b]y its own terms, the [Sixth] Amendment makes no exception for so-called 'petty offenses.'" *Rules of Procedure for the Trial of Minor Offenses Before United States' Magistrates,* 51 F.R.D. 197, 209 (1971) (Black, J. dissenting).   Noting the "puzzling" nature of the rules, he argued that their adoption "dilut[ed] the straightforward and fundamental Sixth Amendment guarantee of trial by jury[.]" *Id.*   Further highlighting the constitutional problem with denying the jury trial right for petty offenses, he noted that "judicial lawmaking" that strips the right to trial by jury in petty offense prosecutions "is wholly at odds with the philosophy of separation of powers in our Constitution."   *Id.* (citing U.S. Const. art. I, § 1). But he noted that even under its Article I powers, Congress could not impose such a rule since "any legislation impairing Sixth Amendment rights would of course be unconstitutional." *Id.*

As the Supreme Court recently stated, "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a person's liberty."   *Haymond*, 139 S. Ct. at 2373.   Thus, it is hard to reason why the same constitutional violation does not occur because the person's liberty is taken, or threatened to be taken, for "less than six months"—the court-recognized penalty threshold for a "petty" offense, and which Appellant faced in this case.   *See Lewis v. United States.*, 518 U.S. 322, 326 (1996) ("An offense carrying a maximum prison term of six months or less is presumed petty, unless the legislature has authorized additional statutory penalties so severe as to indicate that the legislature considered the offense serious.").   Indeed, that determination seems completely

arbitrary when imprisonment—even for arguably short periods of time—takes one's liberty and may induce life-altering collateral consequences, such as loss of a job.  In the alternative, and despite the *Lewis* Court's holding to the contrary, *see* 518 U.S. at 330, where, as here, the accused is charged with multiple "petty offenses" which each carry terms of imprisonment of less than six months, the cumulative effect of those charges, *i.e.*, a possible term of imprisonment longer than six months, should establish the right to a jury.

There can be little doubt that the ample jury trial right recognized by the Founders in the Constitution is applicable to this matter and this Court should hold that Appellant was deprived of his constitutional right to a trial by jury.

## CONCLUSION

For all of the reasons above, Appellant's convictions must be vacated.


Respectfully submitted,

 /s/ *Jenin Younes*
Jenin Younes
NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street NW, Suite 450
Washington, DC 20036
202-869-5210
Jenin.younes@ncla.legal

August 23, 2022                     Counsel for Defendant-Appellant

## CERTIFICATE OF COMPLIANCE

I am an attorney for Defendant-Appellant David Lesh.   Pursuant to Fed. R. App. P. 32(a)(7)(C), I hereby certify that the foregoing brief is in 12-point, proportionately spaced Times New Roman type.   The word count of the brief is 9,937, in accordance with the Court's August 17, 2022 order granting the motion to file a brief of up to 10,000 words, not including the table of contents, table of authorities, glossary, signature block, certificate of service, and this certificate of compliance.

 /s/ *Jenin Younes*
Jenin Younes

August 23, 2022

32

## CERTIFICATE OF SERVICE

I hereby certify that on this 23th day of August, 2022, I electronically filed the brief of Appellant with the Clerk of the Court for the United States District Court for the District of Colorado by using the appellate CM/ECF system.  I certify that all participants in the case are registered CM/CF users and that service will be accomplished by the appellate CM/ECF system.

 /s/ *Jenin Younes*
Jenin Younes