1

1          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF COLORADO
2
  Case No. 20-po-7016-GPG
3    _____

4  UNITED STATES OF AMERICA,

5       Plaintiff,

6  vs.

7  1. DAVID LESH,

8       Defendant.

9    _____

10          Proceedings before GORDON P. GALLAGHER, United

11  States Magistrate Judge, United States District Court for

12  the District of Colorado, commencing at 10:04 a.m., January

13  12, 2022, in the United States Courthouse, Grand Junction,

14  Colorado.

15   _____

16          WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

17  ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

18   _____

19                      APPEARANCES

20          PETER HAUTZINGER, Attorney at Law, appearing for

21  the Plaintiff.

22          BARRETT WEISZ, Attorney at Law, appearing for the

23  Defendant.

24   _____

25                      SENTENCING

2

```
 1              P R O C E E D I N G S

 2          (Whereupon, the within electronically recorded

 3  proceedings are herein transcribed, pursuant to order of

 4  counsel.)

 5          THE COURT:  All right, thanks.  We're here today

 6  in United States vs. Mr. David Lesh.  This is case

 7  20-po-0176.  Mr. Lesh is on video, as is his counsel, Mr.

 8  Weisz, as is Mr. Hautzinger for the Government.  We had

 9  previously had consent -- I don't know who else is here --

10  we need it in the petty offense, but just so we're clear for

11  the record, we previously had consent, in fact, a request

12  for Mr. Lesh to appear by video rather than in person.  But

13  since you're new to the case, Mr. Weisz, let me just confirm

14  that that is still the defense's request to proceed by way

15  of video for purposes of this sentencing.

16          MR. WEISZ:  That's correct.

17          THE COURT:  Okay.  And Mr. Hautzinger, does the

18  Government have any problem with that either?

19          MR. HAUTZINGER:  None whatsoever, Your Honor.

20          THE COURT:  Okay.  Mr. Lesh, I don't think that

21  you are in the same place as your counsel, at least based

22  off of the background that I'm seeing.  It looks like

23  different rooms.  The reason I bring that up is the fact

24  that you're not with him does not in any way deprive you of

25  your ability to speak with him.  As we're going through this
```

3

1    hearing today, if at any point in time you want to speak

2    with him either privately or openly, I'll need you to let me

3    know and I'll count on Mr. Weisz similarly if he thinks that

4    there is something that he needs to tell you to let me know

5    and then we'll discuss whether that needs to be privately or

6    openly, depending on the circumstances.  And that can be one

7    time or many times, depending on what's necessary.

8           Do you understand, sir, that that's available if

9    that's something that you want to avail yourself of?

10          MR. LESH:  I do.

11          THE COURT:  All right.  We are here today, and I

12   noted for purposes of sentencing after Mr. Lesh was

13   convicted after a bench trial in this matter to two

14   different petty offenses.  In preparation for today's

15   hearing, I have had an opportunity to review the entirety of

16   the sentencing submission submitted on behalf of Mr. Lesh at

17   Document Number 105.

18          I've also gone back and rereviewed a number, at

19   least a dozen letters submitted that are sprinkled through

20   the record in the course of action in this matter by members

21   of the public and I've read each and everyone of those as

22   well, as well as reviewing the file and the conviction order

23   in this matter that was submitted by the Court.

24          Mr. Hautzinger, have you had an opportunity to

25   review all of the documents that you would like to in this

4

1   matter, sir?

2          MR. HAUTZINGER:  Yes, I have, Your Honor.  Thank

3   you.

4          THE COURT:  Absolutely.  And Mr. Weisz, have you

5   also had an opportunity to review those, and to the extent

6   that Mr. Lesh would like to review any of the letters

7   submitted by the public, to review those with him as well?

8          MR. WEISZ:  I have.

9          THE COURT:  All right.  Mr. Hautzinger, then, let

10  me start with the Government's argument, please.

11         MR. HAUTZINGER:  Thank you, Judge.  I'm in my 34th

12  year as a prosecutor and this is kind of a unique situation.

13  I've never had a case where the underlying conduct is so low

14  level and has gotten so much attention from members of the

15  public and the media.  I have very little to add to the

16  facts of the case.  The Court knows this case as well as I

17  do, if not better, having presided over the trial.

18         One fact that I think is relevant that wasn't

19  really delved into at the trial was the Independence Pass

20  incident that took place prior to the allegations in this

21  case, and I think that's relevant because Mr. Lesh had

22  already been charged with similar conduct and we worked out

23  a fair and equitable agreement for him to do public service

24  and pay a fine, and then these violations followed

25  afterwards.

5

1          In addition to the documents that the Court has

2   referred to, both the submissions from Mr. Lesh and his

3   attorney, but the multiple letters that have been filed by

4   members of the public, I've certainly had a number of

5   independent communications from members of the public to me

6   mostly demanding that Mr. Lesh be locked up for as long as

7   possible.

8          I have consulted with representatives from the

9   forest service and the highest levels of my office, my

10  supervisors and the elect -- or the presidentially appointed

11  U.S. attorney.  I cannot stand here in good conscience and

12  argue for a jail sentence on a case like this given the

13  underlying conduct.

14         We are not requesting restitution because there

15  wasn't any permanent damage to Keystone or any of the other

16  locales that are involved.

17         Having said that, I'm not asking for

18  incarceration, I'm not asking for jail time.  I do recommend

19  the highest fine possible.  I'm going to ask for the maximum

20  $5,000 fine, because I think that is appropriate, and I

21  would also ask the Court to consider ordering a significant

22  number of hours of useful public service.  And it seems to

23  me and the Government that the most appropriate venue or

24  place for doing public service would be through the White

25  River National Forest.

6

1          I've been in contact with the forest service and

2     they will facilitate Mr. Lesh doing public service in terms

3     of working on the national forest lands to mitigate other

4     damage and clean things up, et cetera.  They'll find a way

5     to make that happen, but I think that's an appropriate

6     resolution here.

7          There is a need, I believe, to deter both Mr. Lesh

8     and others from conducting themselves in this manner.  And I

9     also want to say, I think trial counsel argued repetitively

10    that this was some kind of persecution of Mr. Lesh or that

11    we are prosecuting him because we think he's a bad person.

12    That's just simply not the case.  In fact, I think Mr. Lesh

13    is admirable in a number of ways as an entrepreneur who has

14    built his own business, and I think it's -- the letters that

15    were submitted speak well for him.  I don't think he's a bad

16    person.  I think he made some bad decisions in this case

17    that kind of backed all of us into a corner and gave me no

18    choice but to prosecute and you no choice but to make the

19    findings you did.

20         That's part of why I can't in good conscience

21    argue for a jail sentence.  The facts of COVID and the

22    pandemic also inform that decision, but I do think that

23    there has been a -- a pattern of -- contempt maybe too

24    strong a word, but certainly disregard for authority, for

25    the Government, for the forest service and for the Court's

7

1  orders, and I think there needs to be some punitive

2  sanctions for that, which is why I'm asking for the maximum

3  fine and a significant number of hours of public service.

4       Finally, I would ask that the Court continue the

5  defendant's ban from national forest lands except for doing

6  public service for I think six months would be the maximum

7  time period that the Court could do so, but I think that's

8  been an appropriate sanction as well.

9       I don't have anything further, Your Honor.

10      THE COURT:  Thank you, Mr. Hautzinger.  Mr. Weisz,

11  your argument, sir.

12      MR. WEISZ:  Your Honor, I obviously came into this

13  case after sentencing and obviously you and Mr. Hautzinger

14  have spent much longer with the case than I, but coming into

15  it and sort of taking the 30,000-foot view of it, this

16  strikes me as the quintessential case where you really can't

17  judge a book by its cover, especially in this polarized

18  social media world that we have.

19      Clearly this case has created a certain image of

20  David Lesh out in the media and the social media world.

21  David Lesh by his own doing has created a fair amount of

22  this image of him that's out in the world, some of the

23  things that Mr. Hautzinger talks about.

24      David Lesh is clearly a provocator.  He uses

25  unique, different, some say offensive images of speeches to

8

1   make his point, to market his company, and some like it and

2   some don't, but in the end, it seems to me that that's

3   really when it comes down to the decision you have to make

4   of what's an appropriate sentence a whole lot of noise.  And

5   when you do what the law directs you to do, which is look at

6   18 U.S.C. 3553 and apply those factors, that strips away a

7   lot of that noise.  That strips away a lot of really things

8   that are irrelevant that are out in the social media world

9   and out in the media world that have been swirling around

10  this case.

11          When you look at those factors, number one, is

12  you're looking at the nature and the circumstances of the

13  offense, and Mr. Hautzinger to his credit has already

14  touched on this.  This is not the crime of the century.

15  These are petty offenses.  You know, at most what happened

16  here is that, you know, based on your convicting him that he

17  went in Keystone and jumped the snowmobile off the terrain

18  park and then posted it on social media.  That's at most

19  what happened here in terms of the nature and circumstance

20  of the offense.  It's essentially at worst a trespass.

21          I think the manager of the -- in my review of the

22  trial transcript, the manager of Keystone mountain, Chris

23  Ingham (ph) his name was, he indicated that they have all

24  kinds of people, especially when it was during the initial

25  shutdown during COVID, that would throw their skis on, throw

9

1   the skins on the ski, would skin up into Keystone area.

2   They would run into them as they were doing their patrols of

3   the area and they would ask them to leave, essentially the

4   same conduct.

5          Now, Mr. Lesh decided to jump -- you know, is

6   convicted of and you found that he is the one that jumped

7   that snowmobile off, but at the end of the day, most of the

8   people that did what Mr. Lesh was convicted of doing were

9   simply asked to leave because it's just not that serious of

10  an offense.  I think the U.S. Forest Service agent who

11  testified characterized it as they have these kind of

12  issues, it's kind of similar to a graffiti case.

13         You then have the other offense of posting these

14  photographs for some type of business gain while on national

15  forest land.  And again, this is a real gray area these

16  days, Judge.  I -- I think it's reasonable to say there were

17  countless social media influencers who are all over national

18  forest land posting pictures on themselves and they get some

19  monetary gain out of it because that's the way the social

20  media Internet world works.  They do it all without permits.

21  It probably happens every single day.

22         So you obviously convicted him of two petty

23  offenses.  That obviously requires a sentence, but the 35 --

24  18 U.S.C. 3553 directs you to consider the nature and the

25  circumstances of the offense and that's really what we have

10

1    here.

2             The next factor to consider under that statute is

3    the history and characteristics of Mr. Lesh.  You have

4    indicated that you reviewed the numerous letters in support

5    of Mr. Lesh attesting to his character that we submitted.  I

6    would suggest, Judge, that those are not your typical

7    character reference letters that a Court sees on behalf of a

8    defendant, even in a much, much more serious criminal case.

9    They're exception really in my view.

10            You look at who are the people writing these

11   letters on behalf of Mr. Lesh who can speak to his essential

12   character and the person he is.  You've got a former county

13   court judge in Colorado Springs.  That really struck me.

14   I'm not sure I can remember in the 25-plus years of doing

15   criminal defense work that an ex-judge goes out of their way

16   to write a reference letter on behalf of a criminal

17   defendant.

18            You have a medical doctor who cares for people in

19   rural communities, you have a CEO of the pro ski tour, you

20   have executive director of a nonprofit, substantial people

21   doing, you know, significant work out in the community who

22   are speaking in support of David Lesh.

23            And then you look at what are they saying.

24   Consistently throughout all these references what you see is

25   David Lesh, again, is not the person that social media

1    portrays him to be, that some people who have written

2    letters portray him to be, or even that, you know, he's --

3    an image he's created to some -- to some degree.

4          You've got a person who works hard for animal

5    rescue by flying his plane around and taking animals out of

6    no kill shelters.  You've got a person who has worked hard

7    to donate food and clothing to homeless people, a person who

8    fundraises for elderly people, a person who has done search

9    and rescue for elderly people, a person who mentors children

10   at a local school, takes them up in their plane so that they

11   can get the experience flying.

12         David Lesh doesn't have to do any of those.  He's

13   not doing it because -- those things because that markets

14   his company.  He's not doing those things because a Court

15   ordered him to do it.  He's doing it because that's the kind

16   of person that he is.  And I think it really is the counter

17   weight or the counter balance to this sort of image that's,

18   you know, out there swirling around in this case when you

19   consider his characteristics.

20         Then you move on to the seriousness of the

21   offense, promote respect for the law, provide just

22   punishment.  Again, we talked about the nature and

23   circumstance of the offense.  Petty offense is essentially a

24   trespass.

25         Promoting respect for the law, and this is

12

1   something Mr. Hautzinger has done and I'm sure the Court is

2   looking at.  It's this situation where this case was

3   pending, other pictures were posted, turned out to be not

4   real pictures, photo shop pictures, but it caused you, Your

5   Honor, to put this -- the condition on that Mr. Lesh can no

6   longer enter national forest land or post any pictures, you

7   know, suggesting that he's on national forest land.  And

8   Mr. Hautzinger is asking you to continue that condition.

9           I would suggest that it is unnecessary at this

10  point because I think Mr. Lesh has gotten the message when

11  it comes to promoting respect for law through his compliance

12  with this condition.  It's been almost 14 months that these

13  conditions have been in place.

14          For most -- a lot of people this would not be a

15  difficult thing, but for Mr. Lesh this is a huge part of his

16  business and a huge part of who he is to go on -- into the

17  backcountry and ski and snowmobile and be in those areas.

18  You know, it's a huge part of his career as a pro skier,

19  it's a huge part of who he is and it's a huge part of his

20  company, but he's complied over the last 14 months without

21  exception with your order in that regard.

22          That shows that to the extent there is a current

23  concern that he doesn't respect this Court, doesn't respect

24  the law, that he does, and to the extent there was a message

25  that he needed to receive, he received it and he's been

13

1    flawless in his compliance with your orders since that order

2    was imposed.

3            In terms of punishment, Your Honor, Mr. Hautzinger

4    suggests a fine.  I don't think Mr. Lesh has any particular

5    problem with a fine.  A fine may well be appropriate in this

6    case.  But I think it's important to note, the Court to

7    understand, Mr. Lesh has endured a lot of hate from the

8    public as a result of this case.  Again, I want to make

9    clear that we're not suggesting it's not anything that

10   Mr. Lesh did.  He certainly was again, a provocator, he's

11   put things up on social media that's generated some of this

12   what amounts to hate, but it's morphed into death threats

13   that he's received, it's morphed into things like people

14   sending him excrement and leaving it outside his office in

15   Denver, massive amounts of this kind of thing that he's had

16   to endure.  So to the extent that there needs to be an

17   aspect of punishment, there has been some punishment here by

18   the acts of some of the members of the community against

19   Mr. Lesh.

20           And again, he owns part of that.  He understands

21   that the way he portrays himself, things that he has put on

22   social media, he's a provocator, that's going to come back

23   at him, but this has -- in some sense has been beyond the

24   pale, but it's unfortunately sort of how our society is now.

25   People disagree with things and they go way overboard.

14

1          When you look at those factors, Your Honor, I

2   think, you know, Mr. Hautzinger is correct, it's not

3   something that warrants any type of incarceration.  This is

4   really about, you know, should there be a fine, should there

5   be some public service.

6          And then really this condition of keeping him off

7   national forest land is -- is unnecessary at this point

8   because he's shown exceptional compliance for over a year.

9          I want to let the Court know that on my advice,

10  once I'm done speaking, Mr. Lesh is not going to be making

11  any statement to the Court because there will be an appeal

12  pursued on this matter, and for that reason I've advised him

13  he's not going to be making any additional statement.  He's

14  relying on my statements to the Court.

15          We've also asked Jon Franklin, who I think the

16  Court can see on the video, to speak to the Court briefly on

17  behalf of Mr. Lesh.  He's one of the people who wrote a

18  letter, but we thought it was important that at least the

19  Court hear from one person who can really speak to

20  Mr. Lesh's true character.

21          Again, Your Honor, I think the Court -- it would

22  be appropriate for the Court to even impose the fine and

23  that's the end of it.  Mr. Lesh is already going to continue

24  all of his long-standing and exceptional public service

25  that's detailed in all the letters you have.  I don't think

1    an order from the Court is necessary for him to continue to

2    give back significantly to the community.  A fine is

3    appropriate.  This has been a long journey obviously for

4    everyone in this case and any other (indiscernible) just

5    seem unnecessary at this point given all these factors.

6              With that, Your Honor, I don't have anything else.

7    I would ask that Mr. Franklin be allowed to say a few words.

8              THE COURT:  All right, thank you.  Mr. Weisz.

9    Mr. Lesh, I'm not going to ask you to say anything.  Just

10   confirming with you that that's the circumstance, that at

11   this juncture you're going to exercise your right to remain

12   silent, sir?

13             MR. LESH:  That is correct, Your Honor.

14             THE COURT:  Okay, thank you.  All right.

15   Mr. Franklin, go ahead and tell me what you would like to,

16   sir.

17             MR. FRANKLIN:  I have to say that was --

18             THE COURT:  I'm not hearing you, Mr. Franklin.  I

19   heard the first word or two and then --

20             MR. FRANKLIN:  Can you hear me now?  Can you hear

21   me now?

22             THE COURT:  Yes, I can hear you now.

23             MR. FRANKLIN:  All right, sorry.  That was a tough

24   act to follow.  He said a lot of things that I'm going to

25   say and that I truly believe.

16

1          I've known David for probably over ten years now

2    and in that time I've seen him as a mentor to my son.  David

3    and my son met in the pipes and parks skiing around

4    Colorado.  My son was a pipe and park skier and a filmer and

5    they worked together.  Out of that I did some business with

6    David early on, again, about ten years ago where we put some

7    of his first draft clothing, it was a prior incarnation of

8    the company that he has now into a store that I owned in

9    Vail, Colorado.  And at the end of the day there were some

10   things to resolve and we resolved them, you know, in a

11   really easy fashion.  I've certainly dealt with other people

12   that would not have worked so closely with me to resolve

13   discrepancies in items that we were dealing with at the time

14   and we worked things out and remain friends.

15          And over the remaining ten years I've watched as

16   David grew from, you know, a young entrepreneur to a more

17   mature entrepreneur and watched him as a mentor to other

18   young business people such as my son.  And as always he

19   showed, you know, a strength of character that I saw right

20   from the beginning in resolving things and in doing business

21   and in moving his company and other businesses forward.

22          I found him to be completely trustworthy.  I found

23   him to be a man of his word, not someone that you would have

24   to get into long, legal documents with, but someone that you

25   could shake hands with and move forward and always know that

17

1   what he said he was going to do he would do.  And, you know,

2   I like to think that me and my family operate the same way.

3   As such, I found him as a man of character.

4          And then along the way, I saw some of the

5   attributes that Mr. Weisz mentioned, giving coats to the

6   homeless and him as the kind of guy that would pick up a

7   piece of trash on the floor that, you know, other people

8   would walk by.  I watched on social media the animal rescue

9   stuff.  I saw the public sort of works that David would do.

10          And I saw that people that, you know, would give

11   David a hard time were people that didn't really know David.

12   A counter story to that is, as an athlete agent at IMG where

13   I spent the first 15 years of my career, I saw just the

14   opposite qualities in many athletes and many public figures

15   where they came off as being very positive and very well,

16   but on the private side, I didn't feel they were very good

17   people and very trustworthy people.  Somehow on the public

18   side they, you know, came off very positively.

19          David, be it by his own action or if he built his

20   person or whatever it was, is was just the opposite.  On the

21   private side dealing with me and my family I find him to be,

22   you know, a man of character, a man of principle, someone

23   that I trust with the life of my children, go up in the

24   airplane and all that, whereas on the public side, you know,

25   he comes off as very different.

1        And to those people who are giving him a hard

2    time, I have to say, they don't know David.  These are not

3    people that know David.  You know, I know David.  I've

4    interacted with him for over a decade, and as such, I found

5    him to be, you know, a man of character, someone that I

6    trust, a man of his word and, you know, short and sweet,

7    that's, you know, my opinion with David.

8        My opinion is expressed as someone who is, you

9    know, a law school graduate, a former law school professor

10   at the University of Denver teaching sports entertainment

11   law in the '80s and '90s, and as CEO of not only a global

12   sports league, but of ski racing media, which is known as

13   the bible of the sport.  It's been around since 1969.  So my

14   two advocations and vocations now are obviously skiing, but

15   also as CEO of an international media company and

16   international sports league, and as such, I think I've got a

17   pretty good idea of, you know, what people are like and who

18   they are.

19       And with that said, you know, I found David to be

20   a man of character and someone that I'm taking time out of

21   my day to support to, you know, let you know my feelings on

22   David.  Thank you.

23       THE COURT:  Thank you, Mr. Franklin.  Ms. Barnes,

24   for purposes of our notes, I know Mr. Franklin didn't spell

25   his name out, but it's listed on the video feed, so we can

1   note that Jon, J-O-N, J. Franklin, F-R-A-N-K-L-I-N, spoke on

2   behalf of Mr. Lesh.

3            All right.  Mr. Weisz, any further presentation

4   from the defense?

5            MR. WEISZ:  (Indiscernible).

6            THE COURT:  All right.  This is undoubtedly

7   wrapped into a couple of petty offenses, a fairly complex

8   circumstance as the parties have mentioned, both because of

9   the factual circumstances of this case, the societal

10  circumstances surrounding it and the circumstances of

11  Mr. Lesh himself, and I'll touch on all of those as I

12  discuss what I think is appropriate and what I'm going to do

13  in this matter.

14            First, let me comment on what this isn't.  I've

15  read, as I noted, all of the letters.  There has been an

16  incensed, the public is very upset about things that

17  Mr. Lesh has posted.  Many of those have to do, frankly,

18  with other matters.  There are two other potential cases

19  here that for reasons the Government believed to be good and

20  proper and which the Court is not in any way commenting on

21  because that's not my purview, have not been prosecuted here

22  or began prosecution and now continued.  It was just touched

23  on a little bit in terms of whether or not the pictures were

24  fake or photoshopped, but Mr. Lesh is not here for

25  sentencing in any way with regard to what has been termed

20

1    the Hanging Lake photo or the Maroon Lake photo.  Those were

2    not matters that went to fruition in prosecution.

3           What Mr. Lesh is here for today is prosecution

4    with regard to two petty offenses from April of 2020, both

5    having to do with the snowmobile event on a ski resort in

6    the Keystone area.  That's this prosecution.

7           Also fair for the Court to consider is the prior

8    citation or violation notice having to do with Independence

9    Pass for which Mr. Lesh by way of entering into an agreement

10   with the Government did take responsibility for and

11   completed some public service and paid a financial amount or

12   fine as a result of that.  But the other matters either were

13   not charged or were dismissed and the Court is not going to

14   consider for purposes of sentencing, of course, the things

15   that Mr. Lesh is not convicted of.

16          In terms of some societal background relating to

17   this, I vividly remember the night in March of 2020 when I

18   was packing my skis and skiing on Sunday morning and

19   Colorado shut down its ski industry about a month before

20   this occurred, and as Mr. Weisz has mentioned, some

21   individuals may have chosen to trespass onto various resorts

22   on this, skin uphill and ski down, because they wanted to

23   keep having a ski season as many of us were upset that that

24   ski season closed down for the reasons of COVID.  And, of

25   course, we were disappointed.  I suspect thousands of skiers

1   in Colorado were disappointed with that, but that's the way

2   that the spring of 2020 went, but there were some good

3   reasons for that, and those included, obviously, the danger

4   of being on lifts and otherwise, but they also included the

5   danger to individuals who may have had to come out and

6   rescue or help those individuals who might have gotten hurt

7   or in trouble on ski slopes in Colorado.  And Mr. Lesh, for

8   whatever reasons, either personal or business, decided to

9   disregard that order.

10          Jumping a snowmobile off of a jump in a terrain

11   park I think is of a different character than skinning

12   uphill and coming down on backcountry tele or AT skis, not

13   that somebody couldn't get hurt doing that, but you can't

14   jump a snowmobile off of a terrain park feature in a ski

15   resort ever unless it's some kind of a special day,

16   certainly not when it's closed.

17          And Mr. Lesh may be a phenomenal snowmobile

18   jumper, but as anybody who is in the backcountry knows, even

19   the very best climbers and skiers take a risk of getting

20   hurt at some point in time and that puts -- at least in

21   April of 2020 when we didn't know a whole lot about COVID,

22   that puts others in danger too.  Had something gone wrong as

23   a result of this, Mr. Lesh might have put backcountry

24   rescuers or first responders at risk to have to come and

25   save him or come out to the ski resort for that purpose, and

22

1   that was a complete disregard of closures, orders, and here

2   it wasn't just done, of course, for private reasons.  This

3   was posted.

4           Mr. Lesh is a bit of an enigma.  Clearly he has

5   been described as a provocateur.  I think in society we are

6   all coming to grips with the power that exists by

7   individuals who decide to post things and then sit back and

8   see what happens.  Those have had some horrible societal

9   results over the last year or so that we're still coming to

10  grips with.

11          I've heard discussion and read about Mr. Lesh and

12  the good character that he has if you get to know him

13  personally, and I don't doubt that that is true, but at the

14  same time, that is not the image, at least in many of his

15  postings that Mr. Lesh is portraying to the public.  And

16  when Mr. Lesh goes out and intentionally portrays a bad boy

17  image to the public, that's what the public is going to

18  think about him, because that's what he's putting out on

19  social media.

20          So he may be a great guy in private, he may be

21  somebody that people trust their children or others to, but

22  when activities like this encourage individuals to engage in

23  illegal activities and dangerous activities, and when it's

24  done, at least in the Court's view, for the profit of a

25  business, that is of a different character than somebody who

23

1    may choose to simply trespass at a ski resort because they

2    want to continue their ski season.  I don't doubt that

3    Mr. Lesh wanted to continue his ski season too, we all did,

4    but this encourages people to put themselves in different

5    positions for different reasons.

6            Also, there has been some discussion, and I think

7    it merits comment, in terms of being able to use the

8    national forest for essentially promotional activities.

9    Certainly there are many people who take pictures of

10   themselves doing things in the national forest or on public

11   land that then make a profit off of that in one way or the

12   other, social media, entrepreneur or business people, and to

13   the extent that that is legal, that has nothing to do with

14   this Court.  It is when somebody intentionally goes onto

15   closed land and then does something that they're not allowed

16   to do, kind of a two strikes there.  You don't get to go

17   onto Keystone when it's closed and you certainly don't get

18   to jump a snowmobile off of a terrain park and then tries to

19   make money off of it.  That again is also of a different

20   character.

21           And as Mr. Lesh in his own words commented to the

22   media, his company, at least in his view, made a substantial

23   increase in profit off of those activities, which certainly

24   makes it seem like that was the intentional result of what

25   one letter has termed as a shenanigan.  When somebody is

1   publicizing this to the public, as Mr. Lesh did, it goes

2   well beyond shenanigan.

3          I have to take a look, and I do, at the sentencing

4   factors set forth in 3553.  Those include promoting respect

5   for the law and providing just punishment to adequately

6   deter criminal conduct, protecting the public from further

7   crimes that Mr. Lesh might commit.  Factor D, needed

8   educational/vocational training is really not a factor based

9   off of the sentence that I'm going to impose.

10          I also have to take into account the nature and

11   circumstances of the offense, Mr. Lesh's history and

12   characteristics, the type of sentencing that are available.

13   Here, I don't need to look at the federal sentencing

14   guidelines as this is a petty offense.  And the need to

15   avoid unwarranted sentence disparities among defendants with

16   similar record found guilty of similar conduct and any need

17   for restitution.

18          Addressing the disparities, frankly, as has been

19   noted, this is a -- essentially a one-of-a-kind

20   circumstance.  I don't know that I've ever seen a case like

21   this before that has generated this kind of public ire at

22   the same time being two petty offenses and the Government is

23   not requesting any restitution on behalf of the ski resort.

24          Mr. Lesh has very little criminal history.  I've

25   already discussed the violation notice from Vail or

1    Independence Pass from a prior incident, but that appears to

2    the Court to be the extent of Mr. Lesh's criminal history,

3    and he appears to have led a law-abiding productive life,

4    runs a successful company, has excellent references from a

5    number of individuals, as Mr. Weisz has commented, that

6    generally would not be individuals that would write

7    recommendation letters on somebody.  I agree, I don't know

8    that I've ever seen a county court or former county court

9    judge write a recommendation for somebody.  So that speaks

10   well of Mr. Lesh.

11          As I noted, Mr. Lesh is a bit of an enigma in

12   terms of that fostering significant private relationships in

13   individuals who trust and respect him, but at the same time

14   putting a different persona out to the public, and the Court

15   has to take into account both of those things.

16          Despite the fact that I think members of the

17   public have requested a jail sentence for Mr. Lesh, I don't

18   believe that that is appropriate at this time, although I

19   seriously wrestled with that, and I'm not going to send

20   Mr. Lesh to jail at this time.  I say "at this time" very

21   intentionally.  This has been an iterative process and

22   Mr. Lesh has at times certainly seemed to border on

23   contemptuous behavior, although for the last 12 to 14 months

24   from all accounts he has listened to my orders explicitly

25   and stayed off of public land, and I'm going to error on the

1   side of hoping that that behavior will continue, the good

2   behavior, because there has now been a year there of good

3   behavior as far as the Court is concerned.

4          Also, I am loathe to incarcerate somebody for a

5   petty offense of this nature, and under the circumstances of

6   COVID with repeated outbreaks at various detention

7   facilities that just would not appear to be a just sentence

8   to me.

9          I do believe that there needs to be a deterrent

10  effect to this, both for Mr. Lesh and for the public and

11  because it speaks to the public.  I think in terms of that,

12  the appropriate sentence and the sentence that I impose is a

13  $5000 fine on each count, as well as service that -- I'm

14  sorry, excuse me.  160 hours of public service that is

15  essentially -- we're in a circumstance where I don't have

16  the ability of imposing the ability to divest Virtika of

17  funds that he has made over the course of this case from

18  Mr. Lesh's activity, and I'm not imposing the sentence as a

19  result of that, nor, I want to be clear, am I imposing a

20  significant amount of public service because Mr. Lesh chose

21  to go to trial.  That was his constitutional right, he

22  exercised it and the Court does not take that into account.

23         I do take into account the significant amount of

24  Government work by law enforcement that was necessary to

25  investigate Mr. Lesh's activity here, and I think as a

27

1    result of that and as a result of what Mr. Lesh appeared to

2    do here, giving back to the public by 160 hours of public

3    service is an adequate deterrent, also serves to promote

4    respect for the law and provide just punishment.  Half of

5    that public service is to be done in a fashion that benefits

6    the White River National Forest.  The other half can be done

7    in whatever fashion Mr. Lesh chooses to do it.  That can be

8    done in public service through things he has already done.

9             Mr. Lesh has expressed through his letters a

10   significant desire to work with animals and work with

11   rescue.  I have no problem with half of that public service

12   if Mr. Lesh choose it being done in that fashion.

13            I also do and must impose the forfeiture amounts

14   in terms of the special assessment.  Ms. Barnes, are those

15   25 a count?

16            COURTROOM DEPUTY:  30 per count.

17            THE COURT:  30 per count.  I do impose a $30

18   special assessment per count.  That leaves the issue of the

19   ban from public land.  At this point in time I'm not going

20   to continue that ban.  That has gone on -- I appreciate the

21   Government's perspective there.  That has gone on at this

22   juncture for at least a year and I have had no reported

23   violations.  I think Mr. Lesh should enjoy the same

24   opportunity the rest of us have to enjoy public lands as

25   long as he does so lawfully and not destructively.  And a

1    year off of those I think is sufficient at this point in

2    time.

3           I am placing you on unsupervised probation,

4    however, Mr. Lesh, to make sure that the things that I've

5    required get done for the six-month period of time.  That

6    also includes a stricture that you not violate state,

7    federal or local law.  So if in the six-month time period

8    you were to violate any law, which includes doing something

9    inappropriate on federal land, somebody will tell me, we'll

10   be back in court and that ban could then be instituted as

11   well as that jail sentence is still at least conceivably

12   possible out there.

13          So I think that takes care of everything from my

14   perspective.  There is a fine, the special assessment, the

15   public service and the six months of unsupervised probation,

16   which is the maximum available under the law for petty

17   offense.

18          Mr. Lesh, I understand that you are remaining

19   silent in terms of statements and that's fine, but do you

20   have any questions about the sentence that I've just

21   imposed, sir?

22          MR. LESH:  I do not.

23          THE COURT:  All right.  Mr. Weisz, anything

24   further from the defense?

25          MR. WEISZ:  Your Honor, we do.  We would request

1    that the Court grant a stay of the sentence just imposed.

2    Rule 58(g)(3) specifically says that Rule 38 applies to

3    judgments by magistrate -- judgment of convictions by

4    magistrate.  And then Rule 38 specifically allows the Court

5    to stay any fine or any probation pending appeal.

6           As we've indicated, Mr. Lesh will be appealing.

7    His appellate counsel I believe is on the line.  And so what

8    we would request is the Court grant a stay on the

9    probationary sentence just imposed as well as the fine and

10   the public service conditions until the appeal is completed.

11          THE COURT:  Before I turn to Mr. Hautzinger for

12   the Government's position, if they have any, do you have a

13   timeframe, Mr. Weisz, on at least when the initial notice of

14   appeal is likely to be filed?

15          MR. WEISZ:  I can defer to Mr. McClain, who I

16   believe is on the line, but I believe the time period is the

17   same, which is 14 days, just like it would be from District

18   Court to the Tenth Circuit, but I'll defer to Mr. McClain.

19          THE COURT:  All right.  Mr. McClain, do you intend

20   on filing a notice of the appeal within that a 14-day time

21   period?

22          MR. McCLAIN:  Yes, Your Honor.

23          THE COURT:  All right.  Mr. Hautzinger, does the

24   Government have a position?

25          MR. HAUTZINGER:  The Government would oppose a

1    stay, Your Honor.

2              THE COURT:  Sorry.  Give me the -- I think you

3    said Rule 53 and (indiscernible).

4              MR. WEISZ:  Rule 58(g)(3).  That's -- you know,

5    obviously Rule 58 is the rule that generally governs

6    magistrate proceedings.  At (g)(3) it references a stay and

7    says that Rule 38 applies to judgments of conviction and

8    sentence entered by a magistrate.  And Rule 38 is just the

9    general rule concerning stays pending appeal.

10             THE COURT:  All right, give me just a moment.

11             (Pause in the proceedings.)

12             MR. WEISZ:  And, Judge, if it helps, looking at

13   Rule 38, it's subsection (c) that addresses a stay of a fine

14   and subsection (d) that addresses stay of a probationary

15   sentence.

16             THE COURT:  All right.  Well, the general analysis

17   with regard to a stay often comes down to essentially, for

18   lack of a better word, a danger analysis.  When I'm looking

19   at a jail sentence, which I'm not here, there is also often

20   an analysis of if I don't incarcerate at this person at this

21   time even though they're appealing, is something bad going

22   to happen?  Clearly that's not sentence of the Court.

23             The sentence of the Court here is public service,

24   unsupervised probation to ensure compliance and a fine.

25   Were I to require Mr. Lesh at this point in time to begin

1    his public service and were he to -- or pay a fine for that

2    matter and were he to be successful at his appeal, there is

3    probably no mechanism for undoing the things that he's done.

4          At this point in time given the nature of the

5    sentence, the fact that there has been appellate counsel

6    retained, and the Court is aware, of course, from prior

7    motions filed here of the nature of the potential appeal, I

8    do find, even though a stay under Rule 38 is not a mandatory

9    stay, it's a discretionary stay, I nevertheless find that it

10   is appropriate to stay the sentence at this juncture.  That

11   is the order of the Court.  It is stayed at this point for

12   no more than 14 days.

13         If an appeal notice is filed within that 14 days,

14   the stay will then extend until the litigation on the appeal

15   is done.  If for whatever reason the defense chooses not to

16   perfect their appeal by filing a notice within 14 days, the

17   stay will expire on the 14th -- end of the 14th day if

18   notice of appeal has not been filed by that point in time.

19         So we'll tickle back for internal review in two

20   weeks to see if the appeal has been filed on Mr. Lesh's

21   behalf and issue a further minute order withdrawing the stay

22   at that point if there is no appeal filed.  There won't be

23   any reason for a further minute order at that point if an

24   appeal has been filed and we'll address that upon conclusion

25   of that.

32

1          All right.  Anything further, Mr. Weisz, for the

2    defense?

3          MR. WEISZ:  No, Judge.

4          THE COURT:  Mr. Hautzinger, how about for the

5    Government?

6          MR. HAUTZINGER:  The only question I had was on

7    the public service.  160 hours, is that 80 hours per count

8    or is it just 160 in total?

9          THE COURT:  It's just 160 per total.  I don't know

10   that there is any necessity of breaking it down by count,

11   but then half of that is in some way with regard to the

12   White River National Forest, the other half is at Mr. Lesh's

13   discretion.

14         MR. HAUTZINGER:  I have nothing further, then,

15   Judge.

16         THE COURT:  All right.  Have a good rest of the

17   day, everybody.  Take care.

18         (Whereupon, the within proceedings concluded at

19   10:52 a.m.)

20

21

22

23

24

25

```
1                    TRANSCRIBER'S CERTIFICATE

2            I certify that the foregoing is a correct

3    transcript, to the best of my knowledge and belief (pursuant

4    to the quality of the recording) from the record of

5    proceedings in the above-entitled matter.

6

7    /s/Dyann Labo                    July 27, 2022

8    Signature of Transcriber             Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**PATTERSON TRANSCRIPTION COMPANY**
scheduling@pattersontranscription.com