No. 22-cr-00033-DDD-GPG

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

DAVID LESH,
Defendant-Appellant.

---

## ANSWER BRIEF OF THE UNITED STATES

---

On Appeal from United States Magistrate Judge
for the District of Colorado
The Honorable Gordon P. Gallagher
No. 20-po-07016-GPG

---

COLE FINEGAN
United States Attorney

KARL L. SCHOCK
Assistant U.S. Attorney
1801 California Street
Suite 1600
Denver, CO 80202
(303) 454-0100

Attorneys for Plaintiff-Appellee
United States of America

**ORAL ARGUMENT NOT REQUESTED**

October 24, 2022

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

STATEMENT OF RELATED CASES ................................................................................ vi

JURISDICTIONAL STATEMENT ....................................................................................... 1

STATEMENT OF ISSUES .................................................................................................. 1

STATEMENT OF THE CASE ............................................................................................ 2

    I.    Lesh posts photographs to Instagram of snowmobiling through the
        Keystone Resort terrain park while the resort is closed for COVID. ............. 2

    II.   Lesh is convicted of operating a snowmobile off a designated route
        and conducting unauthorized work activity on Forest System lands. .......... 4

SUMMARY OF ARGUMENT ............................................................................................. 8

ARGUMENT ................................................................................................................... 10

    I.    There was sufficient evidence to sustain Lesh's convictions. ...................... 10

        A.   There was sufficient evidence to sustain Lesh's conviction
            for operating a snowmobile off a designated route. ............................... 11

        B.   There was sufficient evidence to sustain Lesh's conviction
            for conducting unauthorized work activity on Forest
            System land. ............................................................................................. 15

    II.   The magistrate judge did not abuse his discretion in admitting
        statements in the *New Yorker* article as an adoptive admission. ............... 21

    III.  The magistrate judge did not abuse his discretion in admitting
        evidence of other social media posts as intrinsic evidence. ......................... 26

    IV.  There is no constitutional right to a jury trial for petty offenses. ................ 32

CONCLUSION ................................................................................................................ 33

CERTIFICATE OF COMPLIANCE .................................................................................. 34

CERTIFICATE OF SERVICE .......................................................................................... 35

## TABLE OF AUTHORITIES

### Federal Cases

*Attorney Gen. of Okla. v. Tyson Foods, Inc.*,
   565 F.3d 769 (10th Cir. 2009) ............................................................. 22, 27

*Davis v. Workman*,
   695 F.3d 1060 (10th Cir. 2012) ................................................................ 13

*Duncan v. Louisiana*,
   391 U.S. 145 (1968) ........................................................................... 10, 32

*Gundy v. United States*,
   139 S.Ct. 2116 (2019) ............................................................................ 20

*Hardeman v. City of Albuquerque*,
   377 F.3d 1106 (10th Cir. 2004) ................................................................ 20

*In re Columbia Secs. Litig.*,
   155 F.R.D. 466 (S.D.N.Y. 1994) ............................................................... 25

*Jackson v. Virginia*,
   443 U.S. 307 (1979) ............................................................................... 10

*Larez v. City of Los Angeles*,
   946 F.2d 630 (9th Cir. 1991) .................................................................... 23

*Lewis v. United States*,
   518 U.S. 322 (1996) ........................................................................... 10, 32

*Lockhart v. Nelson*,
   488 U.S. 33 (1988) ................................................................................. 13

*Miles v. Ramsey*,
   31 F. Supp. 2d 869 (D. Colo. 1998) ........................................................... 25

*Murrell v. Shalala*,
   43 F.3d 1388 (10th Cir. 1994) .................................................................. 18

*New England Mut. Life Ins. Co. v. Anderson*,
   888 F.2d 646 (10th Cir. 1989) ............................................................ 23, 24

*Old Chief v. United States*,
   519 U.S. 172 (1997) ............................................................................... 30

*Price v. Barr,*
    514 F. Supp.3d 171 (D.D.C. 2021) .......................................................................... 19

*Price v. Garland,*
    45 F.4th 1059 (D.C. Cir. 2022) ................................................................................ 19

*Sorrell v. IMS Health, Inc.,*
    564 U.S. 552 (2011) .................................................................................................. 19

*Tosco Corp. v. Koch Indus., Inc.,*
    216 F.3d 886 (10th Cir. 2000) ................................................................................. 21

*United States v. Brown,*
    200 F.3d 710 (10th Cir. 1999) ................................................................................. 17

*United States v. Burch,*
    169 F.3d 666 (10th Cir. 1999) ................................................................................. 15

*United States v. Burtrum,*
    21 F.4th 680 (10th Cir. 2021) ........................................................................... 10, 14

*United States v. Busch,*
    758 F.2d 1394 (10th Cir. 1985) ............................................................................... 25

*United States v. Cordova,*
    25 F.4th 817 (10th Cir. 2022) ................................................................................. 14

*United States v. Cushing,*
    10 F.4th 1055 (10th Cir. 2021) ............................................................................... 27

*United States v. Duran-Colon,*
    252 F. App'x 420 (2d Cir. 2007) (unpublished) ............................................... 27, 30

*United States v. Fernandez,*
    24 F.4th 1321 (10th Cir. 2022) ................................................................... 10, 13, 14

*United States v. Fisher,*
    805 F.3d 982 (10th Cir. 2015) ................................................................................. 18

*United States v. Ford,*
    613 F.3d 1263 (10th Cir. 2010) ............................................................................... 28

*United States v. Green,*
    175 F.3d 822 (10th Cir. 1999) ................................................................................. 28

*United States v. Hamilton,*
    413 F.3d 1138 (10th Cir. 2005) ......................................................................... 22, 24

iii

*United States v. Harrison,*
    296 F.3d 994 (10th Cir. 2002) ............................................................... 22, 23, 24

*United States v. Hassanzadeh,*
    271 F.3d 574 (4th Cir. 2001) ........................................................................ 30

*United States v. Irving,*
    665 F.3d 1184 (10th Cir. 2011) .................................................................... 29

*United States v. Kienlen,*
    349 F. App'x 349 (10th Cir. 2009) (unpublished) .................................. 25, 29, 30

*United States v. Kupfer,*
    797 F.3d 1233 (10th Cir. 2015) ................................................................ 28, 29

*United States v. Luppi,*
    188 F.3d 520 (Table), 1999 WL 535295 (10th Cir. 1999) ....................................... 32

*United States v. Mobley,*
    971 F.3d 1187 (10th Cir. 2020) .................................................................... 15

*United States v. Muskett,*
    970 F.3d 1233 (10th Cir. 2020) .................................................................... 20

*United States v. Musleh,*
    106 F. App'x 850  (4th Cir. 2004) (unpublished) ................................................ 27

*United States v. Parker,*
    553 F.3d 1309 (10th Cir. 2009) .................................................................... 29

*United States v. Parker,*
    761 F.3d 986 (9th Cir. 2014) ....................................................................... 15

*United States v. Patzer,*
    15 F.3d 934 (10th Cir. 1993) .................................................................... 17, 19

*United States v. Penk,*
    319 F. App'x 733 (10th Cir. 2009) (unpublished) ................................................ 32

*United States v. Peterson,*
    897 F. Supp. 499 (D. Colo. 1995) ................................................................. 17

*United States v. Phillips,*
    583 F.3d 1261 (10th Cir. 2009) .................................................................... 12

*United States v. Pulido-Jacobo,*
    377 F.3d 1124 (10th Cir. 2004) .................................................................... 26

iv

*United States v. Sebolt,*
   554 F. App'x 200 (4th Cir. 2014) (unpublished) ...................................... 31

*United States v. Stenzel,*
   49 F.3d 658 (10th Cir. 1995) .................................................................... 32

*United States v. Tennison,*
   13 F.4th 1049 (10th Cir. 2021) ................................................................ 13

*United States v. Triana,*
   477 F.3d 1189 (10th Cir. 2007) ............................................................... 11

*United States v. Wolf,*
   839 F.2d 1387 (10th Cir. 1988) .......................................................... 22, 23

*Wagstaff v. Protective Apparel Corp. of Am., Inc.,*
   760 F.2d 1074 (10th Cir. 1985) .......................................................... 22, 24

*Williams v. Illinois,*
   567 U.S. 50 (2012) ................................................................................... 25

## Federal Statutes, Regulations, and Rules

7 U.S.C. § 1011(f) ............................................................................... 19, 20

16 U.S.C. § 551 ......................................................................................... 20

18 U.S.C. § 3401 ......................................................................................... 1

18 U.S.C. § 3402 ......................................................................................... 1

18 U.S.C. § 3559(a)(7) ............................................................................. 32

36 C.F.R. § 251.51 .................................................................................... 17

36 C.F.R. § 261.1b .................................................................................... 32

36 C.F.R. § 261.2 ...................................................................................... 17

36 C.F.R. § 261.10(c) ........................................................ 4, 15, 18, 20, 31

36 C.F.R. § 261.14 ................................................................................ 4, 11

Fed. R. Crim. P. 58(g)(2)(D) ................................................................... 10

Fed. R. Evid. 201(b) ................................................................................. 15

Fed. R. Evid. 404(b) .............................................. 1, 5, 9, 25, 27, 28, 29, 30

Fed. R. Evid. 801(d)(2)(B) ............................................................. 6, 21, 22, 24

Fed. R. Evid. 902(6) ..................................................................... 6, 21

## STATEMENT OF RELATED CASES

The government is not aware of any prior or related appeals.

## JURISDICTIONAL STATEMENT

The magistrate judge had jurisdiction under 18 U.S.C. § 3401 because David Lesh was charged with misdemeanors committed in the District of Colorado.  This Court has jurisdiction under 18 U.S.C. § 3402 because Lesh appeals the judgment of the magistrate judge.  Final judgment was entered on January 12, 2022.[1]  ECF No. 113.  Lesh filed a notice of appeal on January 25, 2022.  ECF No. 107.

## STATEMENT OF ISSUES

I.   Whether there was sufficient evidence to sustain Lesh's convictions for (a) operating a snowmobile off a designated route on Forest System lands; and (b) conducting work activity on Forest System lands without authorization.

II.   Whether the trial court properly exercised its discretion in admitting statements in a magazine article as adoptive admissions, where Lesh stated in an interview that "nothing that [the article's author] said was untrue or unfair."

III.   Whether the trial court properly exercised its discretion in admitting evidence of other social media posts as res gestae or proper Rule 404(b) evidence, where those posts fell within the temporal and geographic scope of the charged offense and were admitted for the purpose of showing Lesh's commercial motive.

IV.   Whether Lesh was entitled to a jury trial for petty offenses, contrary to long-standing Supreme Court precedent.

---

[1] The judgment was entered on the docket on March 8, 2022.  ECF No. 113. An amended judgment was entered on March 15, 2022.  ECF No. 115.

STATEMENT OF THE CASE

David Lesh is an outdoor social media influencer, a vendor of skiing apparel, and an admitted internet provocateur. His opening brief attempts to frame this petty prosecution as a barometer of government overreach. But the case is far more straightforward than he makes it out to be. In short, Lesh drove a snowmobile over closed federal lands and posted photos of that stunt on Instagram as a way to increase his visibility and drum up business. In doing so, Lesh openly flouted federal regulations designed to protect federal lands and restrict their unauthorized use. For those brazen violations, he was prosecuted, convicted, and sentenced to a fine, public service, and six months of unsupervised probation. ECF No. 115.

## I.  Lesh posts photographs to Instagram of snowmobiling through the Keystone Resort terrain park while the resort is closed for COVID.

Lesh is the owner of an outdoor apparel company that sells skiing outerwear. ECF No. 89 at 23:4-15. He regularly uses social media to market his company and increase public awareness of his brand. *Id.* at 123, 168-69; ECF No. 90 at 11; Tr. Ex. 9 at 1, 9.[2] Those social media posts often include photographs of individuals engaged in winter sports or other outdoor activities. ECF No. 89 at 168-69.

In April 2020, while Keystone Ski Resort was closed due to the COVID-19 pandemic, Lesh posted two photographs to his Instagram account of an individual

---

[2] The trial exhibits can be found in the bookmarked attachment to the Joint Motion to Supplement Appeal Record With Trial Exhibits (ECF No. 125), which the Court granted (ECF No. 127). Trial exhibit 13 is a video, which was submitted to the Court on a disc—also pursuant to the motion to supplement—on October 13, 2022. ECF No. 130. This brief cites the trial exhibits by exhibit number.

driving a snowmobile off a jump in the Keystone terrain park.  ECF No. 89 at 15, 24-25, 27-28, 30-31; Tr. Exs. 2-3.  Alongside the photos, he included the caption, "Solid park sesh, no lift ticket needed."  ECF No. 89 at 28; Tr. Exs. 2-3.  Keystone Resort is on National Forest System lands.  ECF No. 89 at 41:19-20, 59:12-13.

At the time, the closure of Keystone Resort was marked by signs at the base of the mountain, as well as signage and rope lines marking the boundaries of the ski area.  ECF No. 89 at 15-19.  In addition, large barriers of snow had been placed in front of all of the terrain park features to make them inaccessible.  *Id.* at 22.  The Keystone terrain park was not designed to be used by snowmobiles.  *Id.* at 15.

On the day of Lesh's Instagram posts, a Keystone employee went to the terrain park and saw fresh snowmobile tracks leading off, and looping around, the jump where the photo had been taken.  *Id.* at 31, 33, 63-64.  Someone had gotten a snow shovel from a nearby utility shed and dug a channel through the barrier blocking the jump so that a snowmobile could drive through it.  *Id.* at 33-34.  The tracks indicated that someone had gone over the jump multiple times and had also been snowmobiling around the resort property.  *Id.* at 34.  The employee took several photos of the tracks.  *Id.* at 35-40; Tr. Exs. 4-8.  No Keystone employees were using snowmobiles at the resort during that time period. ECF No. 89 at 32.

Over the next several months, Lesh made two other Instagram posts that are relevant to this appeal.  First, in June 2020, Lesh posted a photo of him standing on a log in the middle of Hanging Lake.  *Id.* at 70, 73-74; Tr. Ex. 10.  Second, in October 2020, Lesh posted a photo of him appearing to defecate in Maroon Lake.

ECF No. 89 at 77-78; Tr. Ex. 11.  Both Hanging Lake and Maroon Lake are on National Forest System lands.  ECF No. 90 at 5.  Lesh claims that the Hanging Lake and Maroon Lake photos are both photoshopped, and the government does not contend that they are authentic.  ECF No. 89 at 110-12; ECF No. 90 at 5.

In January 2021, *The New Yorker* magazine published an article about Lesh that referenced the Keystone, Hanging Lake, and Maroon Lake Instagram posts. Tr. Ex. 9.  The article states that Lesh "posted a couple of photos of him snowmobiling off a jump in a closed terrain park at the Keystone ski area."  *Id.* at 7. It also cited Lesh's claim that his company's sales had increased thirty percent since he posted the photo at Hanging Lake.  *Id.* at 10.  In a subsequent YouTube podcast interview, Lesh stated that "nothing that [the author of the *New Yorker* article] said was untrue or unfair, but it only captures one aspect of me, one part of my life, one part of our marketing, one part of my company."  Tr. Ex. 13 at :32-:45.

## II. Lesh is convicted of operating a snowmobile off a designated route and conducting unauthorized work activity on Forest System lands.

The government charged Lesh with two petty offenses: (1) operating a snowmobile off a designated route on National Forest System lands, in violation of 36 C.F.R. § 261.14 (Count 1); and (2) conducting work activity on Forest System lands without authorization, in violation of 36 C.F.R. § 261.10(c) (Count 2).  ECF No. 53.[3]  Count 1 was tied in date and location to the incident at Keystone Resort.

---

[3] Lesh was initially charged with five additional counts of entering a closed protected area and entering a prohibited body of water.  ECF No. 1.  But the government dropped those counts in the Superseding Information.  ECF No. 53.

*Id.* Count 2 was broader in both date and location—specifying a date range of April 24, 2020 (the day before the Keystone post) through October 21, 2020 (the date of the Maroon Lake post), and including all Forest System lands in Colorado. *Id.*

The case went to a bench trial before the magistrate judge. The government presented the evidence summarized above through the testimony of two witnesses: the Director of Mountain Operations for Keystone Resort, who took photos of the snowmobile tracks in the Keystone terrain park after seeing Lesh's Instagram post; and the U.S. Forest Service Special Agent who conducted the investigation. *See generally* ECF No. 89. The government also presented the snowmobiling Instagram posts (Tr. Exs. 1-3), the photos of the snowmobile tracks (Tr. Exs. 4-7), the *New Yorker* magazine article (Tr. Ex. 9), the Hanging Lake and Maroon Lake Instagram posts (Tr. Exs 10-11), and an excerpt of the podcast interview (Tr. Ex. 13).

Lesh objected to the admission of the Hanging Lake and Maroon Lake Instagram posts under Federal Rule of Evidence 404(b). ECF No. 89 at 70, 75-76. He also argued those posts were irrelevant. *Id.* In response, the government pointed out that the date range and geographic scope of Count 2 encompassed the Hanging Lake and Maroon Lake posts, as well as the Keystone post. *Id.* at 70-71. The magistrate judge agreed and concluded that the additional posts were not Rule 404(b) evidence, but res gestae for the charged offense. *Id.* at 72-73, 76, 80-81.

Lesh also objected to the admission of the *New Yorker* magazine article, arguing that it was hearsay and that it contained irrelevant information. *Id.* at 83-84. The government responded that the article contained party admissions and

5

that it intended to introduce the podcast interview in which Lesh affirmed the accuracy of the article.  *Id.* at 85.  The government then presented that interview. *Id.* at 93.  It argued that Lesh adopted the statements in the magazine article when he told the interviewer that nothing in the article was untrue or unfair.  *Id.* at 96.

Initially, the magistrate judge stated that the article would be admitted under the self-authentication rule of Rule 902(6).  *Id.* at 87.  But the court then turned to the hearsay issue.  *Id.* at 99, 102-03.  At first, it excluded certain statements in the article as not attributable to Lesh.  *Id.* at 99.  But it reconsidered its ruling after rewatching the interview.  *Id.* at 102-03.  The court concluded that, upon further review, Lesh "manifested an adoption or belief in the truth of the statements set forth in the article."  *Id.* at 103.  Therefore, the article was admissible non-hearsay under Rule 801(d)(2)(B).  *Id.* at 102-03.  The court also made clear that it would disregard any irrelevant information.  *Id.* at 87, 92, 98.

At the close of the government's evidence, Lesh moved for judgment of acquittal on both counts.  *Id.* at 195-99.  As to Count 1, Lesh argued that the government had failed to show that the route designations were reflected on an over-snow vehicle use map or that Lesh was physically present at Keystone Resort on the charged date.  *Id.* at 195-98.  As to Count 2, Lesh argued that there was no evidence that he conducted work activity on Forest System lands.  *Id.* at 198-99.

The court denied the motion.  *Id.* at 201-05.  It cited the testimony that the closure of the ski area was clearly marked with signage.  *Id.* at 202-03.  It then found that, viewed in the light most favorable to the prosecution, "the combination

of the pictures, the article, and the video" are sufficient to support the finding that Lesh was the individual operating the snowmobile in the Instagram photo.  *Id.* at 204.  On Count 2, the court found that there was sufficient evidence that the posts were part of Lesh's business model, and thus, commercial activity.  *Id.* at 204-05.

After trial, the magistrate judge issued a written decision finding Lesh guilty on both counts.  ECF No. 90.  The court first found beyond a reasonable doubt that Lesh possessed or operated a snowmobile off a designated route at Keystone Resort.  *Id.* at 9.  The court was particularly persuaded by the photos showing snowmobile tracks in the Keystone terrain park on the day of Lesh's Keystone Instagram posts.  *Id.* at 7-8.  In addition, although the statements in the magazine article did not alone prove identity, Lesh's adoption of those statements in the podcast interview provided further evidence of guilt.  *Id.* at 8-9.  The court concluded that an over-snow vehicle use map was not required, given the obvious closure of the area, but it nevertheless took judicial notice of the publicly available map.  *Id.* at 9-10 n.5.

On Count 2, the court found that Lesh's conduct at Keystone Resort—"on lands encompassed by the regulation"—was "commercial activity" because it was part of an "advertisement and marketing campaign . . . that relied upon social media trolling as a way to stir up controversy and free press while using [Forest System] lands as the location or backdrop."  *Id.* at 11-12.  The court did not deem the Hanging Lake and Maroon Lake posts to be independent violations, but found them relevant to proving motive, opportunity, and intent.  *Id.* at 11.  That motive was further bolstered by Lesh's adopted admission that his company's sales

7

increased by thirty percent after he posted the Hanging Lake photo.  *Id.*  But even without considering that admission, the court still found that Lesh's photography on Forest System lands was commercial use or activity under the regulation.  *Id.* at 12.

Nearly two months later, Lesh moved to file an out-of-time motion for judgment of acquittal raising First Amendment arguments he had not raised at trial.  ECF No. 95.  In that motion, Lesh acknowledged that he had not preserved his constitutional arguments at trial.  *Id.* at 5-6; ECF No. 98 at 5.  He further conceded that his effort to raise those arguments at that point was untimely.  ECF No. 95 at 1-2.  The magistrate judge denied Lesh's request.  ECF No. 101.

### SUMMARY OF ARGUMENT

I.    The evidence at trial established that Lesh posted a photograph from his verified personal Instagram account of a snowmobiler jumping off a ramp at the Keystone terrain park when the resort was closed.  The accompanying caption—"no lift ticket needed"—implicitly acknowledged that the resort was closed.  In addition, Lesh confirmed that a magazine article identifying him as the snowmobiler in the photo was not untrue or unfair.  That was enough for a reasonable factfinder to find that, in fact, it was Lesh who was operating the snowmobile off a designated route.

There was also evidence that the Keystone Instagram post was part of a series of Instagram posts aimed at marketing Lesh's business, which increased the company's sales by 30 percent.  That was enough for a reasonable factfinder to find that the Keystone photos and the conduct they depicted were "work activity," within the meaning of the regulation.  Lesh waived his challenges to that regulation by

failing to raise them below or properly develop them on appeal.  But in any event, those arguments are without merit.  Lesh was not convicted for posting photos on Instagram.  He was convicted for unlawfully entering federal land to do so.

II.     The trial court did not abuse its discretion in admitting statements in the magazine article as nonhearsay adoptive admissions.  The magistrate judge expressly found that Lesh manifested an adoption or belief in the truth of the statements by asserting that nothing in the article was untrue or unfair.  That finding was amply supported by the record, particularly where Lesh had ample opportunity to deny or correct the particular statements in question and failed to do so.  Although an article may be hearsay in and of itself, it becomes nonhearsay when a party adopts it as the party's own statements.  That is what happened here.

III.    The trial court did not abuse its discretion in admitting evidence of other Instagram posts made during the time frame of the charged offense.  Because those posts fell within the temporal and geographic scope of the charged offense, and were part of the same social media marketing campaign, they were intrinsic evidence and, thus, not subject to Rule 404(b).  Even if they were subject to Rule 404(b), they were properly admitted for the permissible purpose of proving Lesh's commercial motive in posting the Keystone photo with which he was charged.  There is no risk of unfair prejudice under Rule 403 in a trial to the court because the magistrate judge is presumed to consider the evidence only for a proper purpose.

IV.    Long-standing Supreme Court precedent establishes that there is no constitutional right to a jury trial for petty offenses, as Lesh's offenses indisputably

9

were.  *Lewis v. United States*, 518 U.S. 322, 325 (1996); *Duncan v. Louisiana*, 391 U.S. 145, 159 (1968).  Lesh's argument to the contrary is foreclosed.

ARGUMENT

## I.   There was sufficient evidence to sustain Lesh's convictions.

**Issue raised and ruled on:** After the government rested, Lesh moved for judgment of acquittal on both counts.  ECF No. 89 at 195-98.  The magistrate judge denied the motion, concluding that there was sufficient evidence to sustain a conviction on each count.  *Id.* at 201-05.  Lesh did not challenge the constitutionality of the regulations under which he was charged.  *Id.* at 195-98; *see* ECF No. 95 at 5 (acknowledging that trial counsel did not make motion on constitutional grounds).

**Standard of review:** The scope of an appeal to the district court from a magistrate judge's judgment of conviction is the same as an appeal to the court of appeals from a judgment entered by the district court.  Fed. R. Crim. P. 58(g)(2)(D).  Thus, this Court reviews the sufficiency of the evidence de novo, "viewing all evidence and any reasonable inferences drawn therefrom in the light most favorable to the conviction."  *United States v. Fernandez*, 24 F.4th 1321, 1326 (10th Cir. 2022) (quotation omitted).  A conviction may be reversed "only when no reasonable [factfinder] could find the defendant guilty beyond a reasonable doubt."  *Id.*

This review is "highly deferential."  *United States v. Burtrum*, 21 F.4th 680, 685 (10th Cir. 2021).  The reviewing court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).  Rather, "the relevant question is whether,

10

after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact" could have so found.  *Id.* at 319.  This Court must "accept the [factfinder's] resolution of the evidence as long as it is within the bounds of reason." *United States v. Triana*, 477 F.3d 1189, 1195 (10th Cir. 2007) (quotation omitted).

### A.   There was sufficient evidence to sustain Lesh's conviction for operating a snowmobile off a designated route.

To convict Lesh under 36 C.F.R. 261.14, the government had to prove that Lesh "possess[ed] or operate[d] an over-snow vehicle [i.e., a snowmobile] on National Forest System lands" outside of designated areas.  The magistrate judge found that the government met its burden.  In making that finding, the magistrate judge cited three primary pieces of evidence: (1) Lesh's Instagram post of a snowmobile jumping off a ramp at Keystone Resort when the resort was closed; (2) photographs of fresh snowmobile tracks at the point of the jump on the day of the posting; and (3) Lesh's confirmation of the truth of statements in a magazine article that it was in fact Lesh going over the jump.  ECF No. 90 at 3-5, 7-9.

Lesh's primary argument is one of identity.  He argues the government failed to prove that he was the individual in the Instagram photo.  Therefore, he argues, the government failed to show that he was on the prohibited Forest System lands on the charged date.  He hypothesizes other possible explanations for the Instagram post: it could have been a picture of someone else; it could have been taken on a different date; the tracks could have been from a different snowmobile.

But to overcome a sufficiency challenge, the evidence "need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities

11

except guilt." *United States v. Phillips*, 583 F.3d 1261, 1264 (10th Cir. 2009) (quotation omitted). And whatever other explanations Lesh offers, the evidence supporting the explanation accepted by the magistrate judge was substantial:

1. On April 25, 2020, while Keystone Resort was closed, Lesh posted from his own personal Instagram account two photos of someone driving a snowmobile over a jump at Keystone Resort, with the caption: "Solid park sesh, no lift ticket needed." ECF No. 89 at 15, 24-25, 27-28; Tr. Exs. 2-3.

2. That day, a Keystone Resort employee observed and photographed fresh snowmobile tracks looping around the exact ski jump shown in Lesh's Instagram post. ECF No. 89 at 31, 33, 63-64. Someone had also removed a snow shovel from a nearby utility shed and cleared a space in the snow berm that was created to block access to the jump. *Id.* at 33-34. Keystone Resort employees were not using snowmobiles at the time. *Id.* at 32.

3. Lesh was later interviewed about a magazine article which stated that "[Lesh] posted a couple photos of him snowmobiling off a jump in a closed terrain park at the Keystone ski area." Tr. Ex. 9 at 7. Lesh stated that nothing in the article was untrue or unfair. Tr. Ex. 13. Though given the opportunity, Lesh did not deny it was him in the photo. ECF No. 90 at 9.

This evidence is sufficient for a reasonable factfinder to find beyond a reasonable doubt that Lesh operated the snowmobile in the closed area—which indisputably was on National Forest System lands, ECF No. 89 at 41:19-20—on the date in question. Lesh's arguments to the contrary are challenges to the *weight* of

12

the evidence—questions that are "exclusively the province of the [factfinder]." *United States v. Tennison*, 13 F.4th 1049, 1059 (10th Cir. 2021). The question for this Court is not now, as Lesh frames it, whether the government proved Lesh's guilt beyond a reasonable doubt. Rather, the question for this Court is whether a reasonable factfinder *could have* so found. *Fernandez*, 24 F.4th at 1326.

Lesh also challenges the magistrate judge's reliance on the magazine article, which he contends was hearsay. As discussed below, the article was properly admitted as an adoptive admission. *Infra* Part II. But it does not matter: "when considering a challenge to the sufficiency of the evidence, [this Court must] consider all evidence admitted at trial, even if admitted improperly." *Davis v. Workman*, 695 F.3d 1060, 1078-79 (10th Cir. 2012); *see also Fernandez*, 24 F.4th at 1327. While the erroneous admission of evidence may give rise to trial error, it does not bear on the "fundamentally different" question of whether the government "failed to prove its case" with the evidence it did present. *Lockhart v. Nelson*, 488 U.S. 33, 40-42 (1988). Thus, because the magistrate judge admitted the article, the statements in that article were necessarily part of the evidence to support Lesh's conviction—regardless of the distinct issue of whether that admission was proper. *Id.*

Beyond his challenge to admissibility, Lesh's challenges to the magazine article are again no more than disputes about how the magistrate judge weighed the evidence. But the magistrate judge, as factfinder, saw the article differently. Not only did Lesh "verbally confirm" that nothing in the article was untrue, but given the opportunity in an hour-long interview, he "did not contend that the author

13

had . . . improperly insinuated that [Lesh] was the individual operating the snowmobile in the Keystone Resort."  ECF No. 90 at 9; *see also* ECF No. 89 at 89:4-7 (noting that entire interview was 56 or 57 minutes).  That was a rational interpretation of the evidence, even if a reasonable factfinder could have conceived of a different one. *United States v. Burtrum*, 21 F.4th 680, 686 (10th Cir. 2021).

Moreover, the evidence would have been legally sufficient to sustain Lesh's conviction even without his adoption of the statements in the article.  The Instagram post from Lesh's verified account—corroborated by contemporaneous fresh snowmobile tracks—itself supported at least a "reasonable inference" that the photograph was of Lesh the previous day. *Fernandez*, 24 F.4th at 1326.  Contrary to Lesh's suggestion, direct identification of the individual in the photo was not necessary.  A sufficiency of the evidence analysis takes into account circumstantial evidence as well. *United States v. Cordova*, 25 F.4th 817, 824-25 (10th Cir. 2022).

Lesh also makes the secondary argument that the government failed to prove that the over-snow vehicle designations were identified on a vehicle use map.  He claims this was an element of the offense.  The magistrate judge rejected this argument, concluding that a map was not required where the closure of the area was conspicuously marked by signage.  ECF No. 89 at 202; ECF No. 90 at 9-10 n.5.

This Court need not decide this issue on appeal, however, because it was mooted by the magistrate judge's taking judicial notice of the publicly available winter motor vehicle use map.  ECF No. 90 at 10 n.5.  The court may judicially notice an adjudicative fact "that is not subject to reasonable dispute because it (1) is

generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Official government maps are proper subjects of judicial notice. *United States v. Burch*, 169 F.3d 666, 672 (10th Cir. 1999).

Here, the magistrate judge took judicial notice of the over-snow vehicle use map, which showed the designated areas, and Lesh does not challenge that judicial notice on appeal. *United States v. Mobley*, 971 F.3d 1187, 1195 (10th Cir. 2020) ("Issues not raised in the opening brief are deemed abandoned or waived."). So whether or not the over-snow vehicle use map was an element, it was satisfied.

## B.   There was sufficient evidence to sustain Lesh's conviction for conducting unauthorized work activity on Forest System land.

Lesh also challenges the sufficiency of the evidence on his second count of conviction for violating 36 C.F.R. 261.10(c). That regulation prohibits "conducting any kind of work activity or service [on regulated lands] unless authorized by Federal law, regulation, or special-use authorization." 36 C.F.R. 261.10(c). Thus, the offense has three elements: (1) conducting any kind of work activity or service; (2) on lands encompassed by the regulation (i.e., Forest System lands); (3) without authorization. *United States v. Parker*, 761 F.3d 986, 993 (9th Cir. 2014).

Lesh does not claim that his activities were authorized. Instead, he claims that he was not on Forest System lands and that, even if he was, he was not conducting work activities. Viewed in the light most favorable to the conviction, the evidence was sufficient to support the magistrate judge's finding to the contrary.

First, Lesh's contention that he was not on regulated lands is entirely derivative of his argument on Count 1, that the government never proved it was him in the snowmobiling photograph.  For all the reasons above, the evidence was sufficient for a reasonable factfinder to find that Lesh was indeed the individual in the photo, which was taken at Keystone Resort.  Keystone Resort is indisputably on Forest System lands encompassed by the regulation.  ECF No. 89 at 59:12-13.

Second, there was substantial evidence that the photo was taken (and then posted) as part of Lesh's business activities.  There was testimony indicating that Lesh was a social media "influencer"—an individual who seeks to monetize exposure on social media—and that he relied on social media to generate publicity for his business.  ECF No. 89 at 122-23; ECF No. 90 at 11; *see generally* Tr. Ex. 9. There was also evidence that Lesh's posting of the snowmobile photo was part of a larger social media campaign to increase visibility for his business—one that included other posts depicting Lesh engaged in controversial behavior on federal land.  And there was evidence—again, in the form of an adoptive admission by Lesh—that his sales increased 30 percent as a result.  ECF No. 89 at 108, 183, 190; Tr. Ex. 9 at 10.  These facts were sufficient for a reasonable factfinder to find that Lesh was engaged in work activity when he produced the snowmobile photo.

Lesh nevertheless argues that his driving the snowmobile was not "any kind of work activity" because he was not "selling merchandise or working, as those words are ordinarily used."  Opening Br. at 14.  But the regulation does not require actual sales.  And Lesh's cramped interpretation of the word "work" does not reflect

16

the realities of his nontraditional business model.  It was enough that, in making the Instagram post, Lesh was "motivated by the prospect of commercial gain." *United States v. Brown*, 200 F.3d 710, 715 (10th Cir. 1999).  Or more precisely, it is enough that a reasonable factfinder could have found that he was.  The act of snowmobiling (on Forest System land) was part of that commercial activity.  *Cf. United States v. Peterson*, 897 F. Supp. 499, 500 (D. Colo. 1995) (finding defendant guilty where he "travelled onto USFS property as part of his work activity").

The government does not argue, as Lesh suggests, that the Instagram post constituted work activity simply because Lesh's sales increased after the post.  Nor does it matter whether Lesh's sales actually increased by as much as he said they did (or at all).  *See Brown*, 200 F.3d at 714 (rejecting argument that defendant must actually receive payment or other financial gain).  What matters is that a reasonable factfinder could find—as the magistrate judge did—that the photos were taken, and the postings were made, for a commercial purpose.  *Id.* at 714-15.[4]

---

[4] As the magistrate judge pointed out, the regulations define "commercial use or activity" to include "any use or activity on National Forest System lands . . . where the primary purpose is the sale of a good or service . . . regardless of whether the use or activity is intended to produce a profit."  36 C.F.R. 261.2; ECF No. 90 at 12.  The magistrate judge also noted that the snowmobiling photo constituted "still photography," as defined by the regulation, which the Tenth Circuit has deemed to be a commercial activity requiring a special-use authorization.  ECF No. 90 at 12 (citing 36 C.F.R. 251.51; *United States v. Patzer*, 15 F.3d 934, 938 (10th Cir. 1993)).  Thus, the magistrate judge found that Lesh's failure to obtain a special-use authorization further supported the finding that he was engaged in work activity.  *Id.* at 12-13.  Lesh does not challenge that basis for the ruling on appeal.

Within the contours of his argument about the sufficiency of the evidence, Lesh alludes to three ancillary arguments he did not raise below and does not fully develop as distinct issues on appeal: that the application of 36 C.F.R. 261.10(c) in this case exceeds Congressional delegation, conflicts with the First Amendment, and violates due process. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (holding that statements about issue not designated as issue for review in appellate brief "fail[ed] to frame and develop an issue sufficient to invoke appellate review"). Lesh previously conceded that he failed to preserve his First Amendment challenge, unsuccessfully seeking leave to file an untimely motion for acquittal to do so. ECF No. 95 at 5. And he never mentioned due process until a single passing reference in that same motion. *Id.* at 8. Although Lesh did file a motion to dismiss under the nondelegation doctrine, ECF No. 67, that motion argued that the legislative delegation itself was too broad, not—as he now suggests—that the government's enforcement of the regulation exceeded a narrower delegation.

Thus, Lesh failed to preserve his constitutional arguments for appeal. He cannot circumvent the rule of forfeiture by attempting to shoehorn those forfeited arguments into his challenge to the sufficiency of the evidence. To the extent these arguments could be construed as independent constitutional challenges to the regulation or his conviction, Lesh has waived those challenges on appeal by failing to argue for plain error. *United States v. Fisher*, 805 F.3d 982, 992 (10th Cir. 2015).

More fundamentally, Lesh's constitutional arguments are based on a misunderstanding of the conduct underlying his convictions. Lesh was not

18

convicted for posting photos on Instagram—and certainly not for posting photoshopped images.  ECF No. 90 at 7 (declining to consider Hanging Lake and Maroon Lake photographs as separate violations because government did not argue they were authentic).  Nor was he convicted for "depict[ing] a violation of a USFS regulation."  Opening Br. at 17.  Lesh was convicted for conducting work activity *on federal lands*—i.e., Keystone Resort—without authorization.  That this work activity involved taking a photograph (the snowmobile photo) does not run afoul of the First Amendment.  *See Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 567 (2011) ("[T]he First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech."); *Price v. Garland*, 45 F.4th 1059, 1068-75 (D.C. Cir. 2022) (holding that permit-and-fee requirement for commercial filmmaking on National Park Service land was constitutional)[5]; *Patzer*, 15 F.3d at 938 (affirming conviction for commercial filming on Forest System lands).

The regulation of such conduct *on federal lands* also falls squarely within the Secretary of Agriculture's statutory authority to enact rules and regulations "to prevent trespasses and otherwise regulate the use and occupancy" of those federal lands.  7 U.S.C. § 1011(f).  Indeed, Lesh appears to concede that the Secretary may lawfully promulgate regulations that concern the actual use or physical occupation

---

[5] Lesh cites the district court order in *Price* for the general proposition that the First Amendment protects the taking of videos and photographs.  Opening Br. at 17 (citing *Price v. Barr*, 514 F. Supp.3d 171 (D.D.C. 2021)).  That case—which held the permitting requirements for commercial filmmaking unconstitutional—was reversed by the D.C. Circuit.  *Price v. Garland*, 45 F.4th 1059 (D.C. Cir. 2022).

of land.  Opening Br. at 16-17.  That is just what this regulation does: it regulates conduct occurring on, not merely affecting, federal lands.  Such a regulation comports with the "intelligible principle" set forth in 7 U.S.C. § 1011(f), among other statutes.  *See Gundy v. United States*, 139 S.Ct. 2116, 2123, 2129 (2019) ("[A] statutory delegation is constitutional as long as Congress lays down an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform." (quotation and alterations omitted)); *see also* 16 U.S.C. § 551 (authorizing regulations to regulate occupancy and use of, and to preserve, national forests), 1246(i) (authorizing regulations governing use of trails); ECF No. 70.

There is no due process problem either.  The plain language of the regulation makes clear that it prohibits "any kind of work activity" without authorization.  36 C.F.R. 261.10(c).  That broad language gives "fair warning" that a photo and Instagram post staged for a commercial purpose would violate the regulation.  *See United States v. Muskett*, 970 F.3d 1233, 1242-43 (10th Cir. 2020) (distinguishing between judicial interpretation of broad statutory language and novel construction that contravened statutory language).  Lesh merely begs the question when he says he could not have anticipated being prosecuted for engaging in recreational activity.  He was not convicted for engaging in recreational activity.  He was convicted because the magistrate judge found the post to be part of Lesh's work activity.[6]

---

[6] Lesh also asserts, without any record support, that the government prosecuted him out of personal animus.  He does not, however, assert any argument based on that unfounded allegation.  *See, e.g., Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1122 (10th Cir. 2004) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some developed argumentation, are deemed waived.").  And it is,

## II.   The magistrate judge did not abuse his discretion in admitting statements in the *New Yorker* article as an adoptive admission.

**Issue raised and ruled on:** Lesh objected to the admission of the *New Yorker* magazine article as hearsay.  ECF No. 89 at 83.  He also objected to the specific statement in the article that Lesh "posted a couple of photos of him snowmobiling off a jump in a closed terrain park" at Keystone.  *Id.* at 94.  The magistrate judge admitted the article and the statement under Rule 801(d)(2)(B), finding that Lesh manifested an adoption or belief in the truth of the statements by declaring in an interview that nothing in the article was untrue.[7]  *Id.* at 102-03.

**Standard of review:** This Court reviews the admission of evidence for an abuse of discretion.  *United States v. Hamilton*, 413 F.3d 1138, 1142 (10th Cir. 2005).  It will not disturb the trial court's evidentiary ruling unless it has "a definite and firm conviction the court made a clear error of judgment or exceeded the bounds of permissible choice under the circumstances."  *Tosco Corp. v. Koch Indus., Inc.*, 216 F.3d 886, 896 (10th Cir. 2000).  In bench trials, questions of admissibility are "relatively unimportant because the rules of evidence are intended primarily for the purpose of withdrawing from the jury matter which might improperly sway the

---

of course, irrelevant to the issue he does raise—whether there was sufficient evidence to support a conviction.  In any event, Lesh made this same accusation at trial and the prosecutor "categorically dispute[d]" it.  ECF No. 89 at 240.

[7] The magistrate judge initially stated that the newspaper article would be admitted under Federal Rule of Evidence 902(6) and erroneously referred to that rule as a hearsay exception.  ECF No. 89 at 87.  But the magistrate judge later clarified that the statements in the article would be admitted under Rule 801(d)(2)(B).  *Id.* at 102-03.  The government agrees that Rule 902(6) addresses the separate issue of authentication and does not resolve Lesh's hearsay objection.

verdict." *Id.* (quotation omitted). Judges, on the other hand, are presumed to have "considered only competent evidence and disregarded any incompetent evidence." *Id.* Therefore, "a judge conducting a bench trial maintains greater leeway in admitting questionable evidence, weighing its persuasive value upon presentation." *Attorney Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 780 (10th Cir. 2009).

Because "hearsay determinations are particularly fact and case specific . . . review of those decisions is 'especially deferential.'" *Hamilton*, 413 F.3d at 1142. Whether a defendant manifested an adoption or belief in the truth of a statement is a preliminary question of fact to be decided by the trial court by a preponderance of the evidence. *United States v. Harrison*, 296 F.3d 994, 1001 (10th Cir. 2002).

**Argument:** A statement is not hearsay if it is offered against an opposing party and "is one the party manifested that it adopted or believed to be true." Fed. R. Evid. 801(d)(2)(B). That manifestation can be demonstrated through words or conduct. *See Harrison*, 296 F.3d at 1001 (finding adoptive admission based on defendant's statement, "I told you I was sorry and it wouldn't happen again"); *Wagstaff v. Protective Apparel Corp. of Am., Inc.*, 760 F.2d 1074, 1078 (10th Cir. 1985) (finding adoptive admission based on defendants' reprinting and distribution of newspaper articles). A party's failure to deny an accusatory statement when given the opportunity is also admissible under this rule. *United States v. Wolf*, 839 F.2d 1387, 1395 n.5 (10th Cir. 1988). The trial court's admission of a statement as an adoptive admission should be affirmed if the trial court made the necessary

factual findings, there is evidentiary support for those findings, and the defendant had an opportunity to dispute those findings. *Harrison*, 296 F.3d at 1001.

Here, each of the conditions in *Harrison* is satisfied. First, the magistrate judge explicitly found that Lesh had "manifested an adoption or belief in the truth of the statements" in the magazine article. ECF No. 89 at 103; ECF No. 90 at 8-9. Second, there was "ample evidentiary support" for that finding. *Harrison*, 296 F.3d at 1001. When asked about the article, Lesh responded that "nothing that [the author] said was untrue or unfair." ECF No. 90 at 6. Moreover, Lesh had the opportunity in that interview to deny the author's statement that Lesh had been the one driving the snowmobile in the Instagram photo, and he failed to do so. *Wolf*, 839 F.2d at 1395 n.5. Third, "it is not unfair to [Lesh] to rely on those findings" where he had notice that the article and video would be introduced, and the full opportunity to argue the issue at trial. *Harrison*, 296 F.3d at 1001-02; ECF No. 90 at 96-104. Thus, admission of those statements was not an abuse of discretion.

Lesh asserts that statements in newspaper articles are generally hearsay.[8] That may be true when the statements are merely those of a third-party reporter. *See New England Mut. Life Ins. Co. v. Anderson*, 888 F.2d 646, 650 (10th Cir. 1989). But when a party adopts the statements—as the magistrate judge found Lesh did

---

[8] Lesh repeatedly refers to newspaper articles as "double hearsay." That phrase refers to the scenario in which the newspaper article repeats a statement made by a third party. *See Larez v. City of Los Angeles*, 946 F.2d 630, 642 (9th Cir. 1991). It does not apply to the reporter's own statements or quotes of the party. *Id.* (noting that quoting party "technically does not pose a double hearsay problem").

23

here—they are no longer the statements of a third party.  They become the party's own statements and, like any other statement by the opposing party, are not hearsay.  Fed. R. Evid. 801(d)(2)(B); *see also New England Mut. Life Ins. Co.*, 888 F.2d at 650 (explaining that statements in newspaper article may be admissible if proper foundation is laid to show that defendant acquiesced in newspaper account).

Indeed, as the magistrate judge pointed out, the Tenth Circuit has held newspaper articles admissible as opposing party statements when the party did no more than reprint and distribute those articles to others.  *See Wagstaff*, 760 F.2d at 1078.  That act, the court held, was enough to "unequivocally manifest[]" the defendant's adoption of the statements in the articles.  *Id.*  Here, Lesh's manifestation of his belief in the truth of the article was explicit.

Lesh takes issue with the magistrate judge's factual finding that Lesh manifested his belief in the truth of the specific statements at issue.  But that is exactly the kind of fact-specific determination that warrants "especially deferential" review.  *Hamilton*, 413 F.3d at 1142; *see also Harrison*, 296 F.3d at 1001 (deferring to district court's disputed finding that defendant admitted truth of what third party said).  Lesh's view—that his admission in the interview did not extend to every statement in the article—was one way to view the evidence.  The magistrate judge's view—that "nothing" means "nothing"—was another.  The resolution of that factual dispute was committed to the sound discretion of the magistrate judge.

Lesh confuses the issue by asserting that he did not have the opportunity to cross-examine the reporter about the accuracy of the statements in the article.

24

There was no need for Lesh to cross-examine the reporter because the reporter's understanding of those statements—along with his "perception, memory, narration, or sincerity"—was irrelevant.  Opening Br. at 21-22 (quoting *In re Columbia Secs. Litig.*, 155 F.R.D. 466, 475 (S.D.N.Y. 1994)).  The magistrate judge was not "[t]aking [the reporter's] word" that the statements were true.  *Id.* at 22 (quoting *Miles v. Ramsey*, 31 F. Supp. 2d 869, 877 (D. Colo. 1998)).  Rather, the magistrate judge was accepting *Lesh's* word that the statements were true—however they were formulated.  Reliance on a defendant's own statements presents no hearsay issue.

Lesh also suggests that the magazine article should have been excluded under Rule 404(b) and Rule 403 because it also referred to other unrelated acts of Lesh.  But "in bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions."  *Williams v. Illinois*, 567 U.S. 50, 69 (2012) (quotation omitted).  Thus, it is *improper* in a bench trial for the court to exclude evidence under Rule 403 on the ground that it is unfairly prejudicial.  *United States v. Kienlen*, 349 F. App'x 349, 351 (10th Cir. 2009) (unpublished).

Here, the magistrate judge expressly stated that the court would not consider any of the extraneous information in the article that Lesh cites on appeal:

> I'm asking my brain, essentially, to exclude that evidence as being irrelevant, and that is exactly what I will do. . . .

> The Court is fully competent of reviewing this article and looking at it only for the statement of the defendant and not as to his opinions on matters aside from this.

ECF No. 89 at 87:18-25; *see also id.* at 98:18-25.  There is no indication that the magistrate judge failed to follow his own admonition.  *See United States v. Busch*,

758 F.2d 1394, 1398 (10th Cir. 1985) (holding that, in trial to court, "the reception of inadmissible evidence is not grounds for reversal where the record shows . . . that the improper evidence played no part in the trial judge's deliberations").

Finally, even if the statements in the article had been improperly admitted, any such error would be harmless. *United States v. Pulido-Jacobo*, 377 F.3d 1124, 1132 (10th Cir. 2004). As noted above, other evidence showed that: (1) Lesh posted a photo to his verified Instagram account of an individual driving a snowmobile over a jump at Keystone when the resort and the terrain park were closed; (2) Lesh included the caption, "Solid park sesh, no lift ticket needed"; and (3) a Keystone employee confirmed that someone had in fact driven a snowmobile over the jump on that day. Although Lesh's adopted admission in the magazine article corroborated this other evidence and bolstered the magistrate judge's finding that Lesh had driven the snowmobile over the jump, it was not essential to that finding. And the statement that Lesh's sales increased was merely corroborative of other evidence suggesting that was a primary purpose of Lesh's conduct. Indeed, the magistrate judge held expressly that "even without considering [Lesh's admissions], the Court could still find that [Lesh's] actions were commercial in nature." ECF No. 90 at 12. Thus, Lesh would have been convicted, even if the article had not been admitted.

## III.   The magistrate judge did not abuse his discretion in admitting evidence of other social media posts as intrinsic evidence.

**Issue raised and ruled on:** Lesh objected to the admission of evidence regarding two Instagram posts depicting him at Hanging Lake and Maroon Lake in June 2020 and October 2020, respectively. ECF No. 89 at 70, 75. The magistrate

judge overruled the objections, concluding that the alleged conduct was included within the offense charged in Count 2, and thus, was res gestae.  *Id.* at 72-73, 76. The magistrate judge later concluded that "[a]t most, the [photographs] can be considered evidence" for proper purposes under Rule 404(b).  ECF No. 90 at 7.

**Standard of review:** The admissibility of evidence under Rule 404(b) "involves a case-specific inquiry that is within the [trial] court's broad discretion." *United States v. Cushing*, 10 F.4th 1055, 1075 (10th Cir. 2021) (quotation omitted). This Court reviews the admission of such evidence "for an abuse of discretion and will not reverse unless the [trial] court's decision exceeded the bounds of permissible choice in the circumstances or was arbitrary, capricious, or whimsical."  *Id.*

A court has greater leeway in admitting evidence in a bench trial because the judge is presumed to consider evidence only for a proper purpose.  *Tyson Foods*, 565 F.3d at 780.  That is particularly true for evidence implicating Rule 404(b) because "the factfinder knows the purpose for which evidence is admitted and is presumed to rest his verdict on the proper inferences to be drawn from such evidence." *United States v. Duran-Colon*, 252 F. App'x 420, 423 (2d Cir. 2007) (unpublished); *see also United States v. Musleh*, 106 F. App'x 850 857 (4th Cir. 2004) (unpublished) ("[W]e accord district courts greater latitude at bench trials in applying Rule 404(b).").

**Argument:** Lesh challenges the admission of two Instagram posts: one showing him at Hanging Lake in June 2020 and one showing him appearing to defecate in Maroon Lake in October 2020.  The magistrate judge correctly concluded that these two posts did not implicate Rule 404(b) because they were intrinsic—i.e.,

res gestae—to the offense charged in Count 2 of the information.  Moreover, even if they could be considered "other acts" under Rule 404(b), they were properly admitted to show, at a minimum, motive, intent, and plan.  ECF No. 90 at 7, 11.

Rule 404(b) applies only to *other* acts—that is, acts that are extrinsic to the charged crime.  *United States v. Kupfer*, 797 F.3d 1233, 1238 (10th Cir. 2015).  It does not apply to acts that are direct evidence of the crime charged.  *United States v. Green*, 175 F.3d 822, 831 (10th Cir. 1999).  Nor does it apply to intrinsic evidence—sometimes known as res gestae.  *Kupfer*, 797 F.3d at 1238; *United States v. Ford*, 613 F.3d 1263, 1267 (10th Cir. 2010).  Evidence is intrinsic when it is "directly connected to the factual circumstances of the crime and provides contextual or background information."  *Kupfer*, 797 F.3d at 1238.  That can occur when the evidence is "inextricably intertwined" with the charged conduct, occurred within the same time frame, or provides "entirely germane background information."  *Id.*  Such evidence is admissible as "part and parcel of the proof of the offense charged in the indictment."  *Ford*, 613 F.3d at 1267 (quotation omitted).

Here, the magistrate judge correctly concluded that the Hanging Lake and Maroon Lake posts were intrinsic evidence of the conduct charged in Count 2.  First, those posts fell within the scope of the charged offense.  Count 2 charged Lesh with conducting work activity on Forest Service lands in Colorado from April 24, 2020 through October 21, 2020.  ECF No. 53 at 1.  The posts in question purported to depict conduct occurring within those geographic and temporal limitations.  ECF No. 89 at 72, 76 (noting Hanging Lake post was made on June 10, 2020 and Maroon

Lake Post was made on October 21, 2020).  Although the magistrate judge ultimately found the posts did not themselves constitute separate violations of the regulation because the government did not prove that Lesh was on Forest System lands when they were created, they nevertheless were *evidence* of such a violation.

Second, even if those posts are not deemed *part* of the charged offense, they were "directly connected" and "inextricably intertwined" with that offense.  *Kupfer*, 797 F.3d at 1238.  As discussed above, there was evidence that Lesh's posting of the snowmobile photo was part of a social media campaign to promote his business by "trolling" the National Forest Service.  ECF No. 90 at 11, 5-6.  The Hanging Lake and Maroon Lake posts—made *during* the time frame charged in the information—were part of that same social media campaign.  Thus, at a minimum, the posts provided "entirely germane background information" that "formed an integral and natural part of the  . . . circumstances surrounding the offense" with which Lesh was charged.  *United States v. Irving*, 665 F.3d 1184, 1213 (10th Cir. 2011).

Alternatively, even if the posts were deemed extrinsic, they would still be admissible.  Rule 404(b) evidence is admissible if the evidence is offered for a proper purpose and is relevant to that purpose.[9]  *United States v. Parker*, 553 F.3d 1309, 1314 (10th Cir. 2009).  The standard for Rule 404(b) admissibility is "permissive."

---

[9] The other two factors in the Rule 404(b) analysis—whether the probative value is substantially outweighed by its prejudicial effect and whether a limiting instruction is given—do not apply in a bench trial.  *See Kienlen*, 349 F. App'x at 351.

*Id.* If the evidence is "relevant and tends to prove a material fact other than the defendant's criminal disposition," it is admissible under Rule 404(b). *Id.*

Here, the two posts in question were not offered to show Lesh's character. They were offered (and admitted) to show Lesh's "pattern of conduct" (i.e., "plan") of posting photos on Instagram as part of a campaign to promote his business. ECF No. 90 at 7, 11; ECF No. 89 at 65:3-5, 75:3-6, 79:19-22, 244:15-23, 245:3-8. That pattern of conduct was relevant to show Lesh's commercial motive and intent in posting the snowmobile photo with which he was charged—both of which are proper purposes under Rule 404(b). ECF No. 90 at 11. That commercial motive, in turn, was relevant to showing Lesh had engaged in "work activity." *See supra* Part I.B.

Lesh also invokes Rule 403, arguing that the probative value of the evidence was outweighed by the risk of unfair prejudice. But as noted above, the Rule 403 unfair prejudice analysis does not apply in bench trials. *Kienlen*, 349 F. App'x at 351. And for good reason. In a bench trial, the factfinder "knows the purpose for which the evidence is admitted and is presumed to rest his verdict on the proper inferences to be drawn from such evidence." *Duran-Colon*, 252 F. App'x at 423. Thus, there is little risk of a decision based on an emotional response or other improper basis. *Old Chief v. United States*, 519 U.S. 172, 180 (1997); *see United States v. Hassanzadeh*, 271 F.3d 574, 5778 (4th Cir. 2001) ("[W]e have confidence that at the bench trial, the experienced district judge was able to separate the emotional impact from the probative value of the potentially prejudicial evidence.").

Moreover, even if Rule 403 did apply here, the trial court did not abuse its discretion in admitting the evidence in question.  The evidence was highly probative of the primary disputed issue on Count 2: whether Lesh's Instagram post of the snowmobile jump was "work activity."  The additional posts showed a part of the story—Lesh's use of Instagram as part of an ongoing social media marketing campaign—that may not have been apparent from the snowmobile photo viewed in isolation.  And any risk of unfair prejudice was negated because the factfinder was a magistrate judge.  Indeed, the magistrate judge stated expressly that the posts were relevant only for "proving motive, opportunity, and intent."  ECF No. 90 at 11.  There is no reason to believe the magistrate judge considered them for any other purpose.  *See United States v. Sebolt*, 554 F. App'x 200, 207 (4th Cir. 2014) (unpublished) ("[W]e are unable to find a single published case in which a court of appeals reversed a district court's admission of extrinsic evidence in a bench trial.").

Finally, any error in the admission of the Hanging Lake and Maroon Lake photos would be harmless because the magistrate judge provided an alternative ground for his decision that did not rest on those photos (or on the larger social media campaign they evinced).  Specifically, the magistrate judge concluded that Lesh's use of photographic equipment on Forest System lands at a location where members of the public generally are not allowed was alone enough to establish commercial activity within the scope of 36 C.F.R. 261.10(c).  ECF No. 90 at 12.  Lesh does not challenge—or even mention—this alternative rationale for the ruling.

**IV.    There is no constitutional right to a jury trial for petty offenses.**

**Issue raised and ruled on:** At a pretrial status conference, Lesh asked to set the case for a jury trial.  Opening Br., Ex. B, at 2:20-22.  He made no argument on that point.  The magistrate judge explained that Lesh was not entitled to a jury trial because the charges were for petty offenses.  *Id.* at 3-4; ECF No. 90 at 2.

**Standard of review:** This Court reviews a defendant's claim that he was entitled to a jury trial de novo.  *United States v. Penk*, 319 F. App'x 733, 734 (10th Cir. 2009) (unpublished); *United States v. Stenzel*, 49 F.3d 658, 660 (10th Cir. 1995).

**Argument:** There is no right to a jury trial for petty offenses.  *Lewis v. United States*, 518 U.S. 322, 325 (1996); *Duncan v. Louisiana*, 391 U.S. 145, 159 (1968).  An offense with a maximum prison term of six months or less is presumptively a petty offense.  *Lewis*, 518 U.S. at 326.  This rule applies even when a defendant is charged with multiple petty offenses that could result in an aggregate sentence exceeding six months.  *Id.* at 330; *see also United States v. Luppi*, 188 F.3d 520 (Table), 1999 WL 535295, at *6 (10th Cir. 1999) (unpublished).

Here, as Lesh acknowledges, he was charged only with petty offenses.  The maximum sentence for each violation was six months' imprisonment.  36 C.F.R. § 261.1b.  That made them Class B misdemeanors and, expressly by statute, petty offenses.  18 U.S.C. § 3559(a)(7) (providing that offense with a maximum term of imprisonment of six months or less is a Class B misdemeanor), § 19 (providing that Class B misdemeanor is a petty offense).  Thus, Lesh had no constitutional right to a jury trial for those offenses.  *Lewis*, 518 U.S. at 325; *Penk*, 319 F. App'x at 734.

Lesh's arguments to the contrary—based on commentators who have questioned this long-standing rule—are foreclosed by Supreme Court precedent.

### CONCLUSION

Lesh's convictions should be affirmed.

DATED: October 24, 2022

Respectfully submitted,

COLE FINEGAN
United States Attorney

/s/ KARL L. SCHOCK
KARL L. SCHOCK
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit ordered by this Court in its October 13, 2022 Order.  ECF No. 128.  It contains 9,370 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).


DATED:  October 24, 2022             /s/ KARL L. SCHOCK
                                     KARL L. SCHOCK
                                     Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on October 24, 2022 I electronically filed the foregoing

**ANSWER BRIEF OF THE UNITED STATES** with the Clerk of the Court for the United

States District Court for the District of Colorado, using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by

the CM/ECF system.

s/ *Kayla Keiter*
KAYLA KEITER
U.S. Attorney's Office
