**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Case No. 1:22-cr-00033-DDD-GPG

UNITED STATES OF AMERICA,

 Plaintiff-Appellee,

v.

DAVID LESH,

 Defendant-Appellant.

## ORDER AFFIRMING CONVICTIONS

 Tom Wolfe died a few years before the events of this case took place, so we are left to imagine what he might have made of the intersection of COVID-pandemic lockdowns, social-media culture, and Defendant-Appellant David Lesh's business model. This order addresses one product of that intersection: Mr. Lesh's conviction on two federal misdemeanors.

 Mr. Lesh owns a company that sells outdoor equipment and apparel. He also is "a prominent skier with a large Instagram following" who frequently posts provocative images on that social-media platform. (Doc. 122 at 3.) Whether the social-media posts exist to support the company, or whether the company exists to capitalize on the social-media

fame is perhaps an open question. That the two are intertwined, however, does not seem to be in dispute.[1]

This case stems from posts Mr. Lesh made on Instagram between April and October of 2020. In April, Mr. Lesh posted a photo of a snowmobiler jumping into the air in the terrain park at Keystone Resort, with the comment, "solid park sesh,[2] no lift ticket needed." (Doc. 125-1 at 2.) In June, he posted photographs appearing to show him standing in the protected area of Hanging Lake. (*Id.* at 27.) And in October, in his own counsel's words, he "posted a photograph to his personal Instagram account that depicted him 'defecating in Maroon Lake,' and bearing the caption, 'a scenic dump with no one there was worth the wait.'" (Doc. 122 at 10; *see also* Doc. 125-1 at 28.)

Classlessness is within the bound of the First Amendment, so none of these posts was itself the subject of criminal charges. The conduct that appeared to be depicted in them, however, was. Since Keystone, Hanging Lake, and Maroon Lake are all located on U.S. Forest Service lands, the United States charged Mr. Lesh with one count of operating a snowmobile outside authorized areas based on the Keystone incident, and one count of selling or offering for sale merchandise or conducting work activity without authorization on lands administered by the National Forest Service. (Doc. 90 at 1.)

Following a bench trial, Magistrate Judge Gordon P. Gallagher convicted Mr. Lesh on both counts. Mr. Lesh now seeks to vacate his

---

[1] (*See, e.g.*, Doc. 130 at :32-:45 (asserting that a magazine article describing some of the facts of this case "only captures one aspect of me, one part of my life, one part of our marketing, one part of my company"); Doc. 122 at 8 (noting Mr. Lesh had stated that his sales increased thirty percent after particular posts gained widespread notoriety).)

[2] Short for the too-long "session."

- 2 -

convictions. Because Mr. Lesh's legal arguments are misplaced and the evidence at trial was sufficient to convict him, the convictions are affirmed.

## BACKGROUND

In April 2020, the Keystone Resort, located on National Forest Service lands, was closed due to the COVID-19 pandemic. (Doc. 90 at 3.) On April 25, 2020, Mr. Lesh posted a photo to his Instagram account of two individuals, one of whom was operating a snowmobile on a Keystone ski jump. (Doc. 125-1 at 1.) The following day, Christopher Ingham, the Director of Mountain Operations for Keystone Resorts, found snowmobile tracks around a Keystone ski jump, even though employees were not using snowmobiles during the resort's closure. (Doc. 90 at 4.) On June 10 and October 21, 2020, Mr. Lesh posted images showing him standing in protected bodies of water on National Forest Service lands, Hanging Lake and Maroon Lake, though, unlike the Keystone photo, the Government does not assert that these are authentic photographs. (*Id.* at 5.) On January 11, 2021, the *New Yorker* published a profile of Mr. Lesh that quoted him saying that the illegality of his photographed behavior increased his sales and that he wanted the Government to charge him for the violations. (*Id.* at 5-6.)

The United States Attorney for the District of Colorado initially charged Mr. Lesh with operating a snowmobile outside of a designated route and improperly entering Hanging Lake and Maroon Lake. (Doc. 1.) The Government then dropped the charges related to Hanging Lake and Maroon Lake, but added a separate charge for conducting work activity without authorization. (Doc. 53.) After a bench trial, Judge Gallagher found Mr. Lesh guilty of both violations. (Doc. 89.) Mr. Lesh appeals those convictions. (Doc. 107.)

## DISCUSSION

Mr. Lesh raises four issues on appeal. He argues that the Government failed to present evidence sufficient to prove either violation, that Judge Gallagher erred in permitting the Government to introduce the *New Yorker* article, that admitting evidence of the Hanging Lake and Maroon Lake posts unfairly prejudiced him, and that he was deprived of his right to a jury trial. (Doc. 122.)

The scope of an appeal from a magistrate judge's judgment of conviction to a district court is the same as an appeal from a district court to a court of appeals. Fed. R. Crim. P. 58(g)(2)(D). I therefore review legal matters, including sufficiency of the evidence, *de novo*, "viewing all evidence and any reasonable inferences drawn therefrom in the light most favorable to the conviction." *United States v. Fernandez*, 24 F.4th 1321, 1326 (10th Cir. 2022).

### I. Binding precedent forecloses Mr. Lesh's argument that he is entitled to a jury trial.

The two offenses for which Mr. Lesh was tried each carry a maximum sentence of six months' imprisonment. *See* 36 C.F.R. § 261.1b. They are thus Class B misdemeanors and, by statute and binding precedent, petty offenses. *See* 18 U.S.C. § 3559(a)(7) (offense with maximum six-month term of imprisonment is a Class B misdemeanor); 18 U.S.C. § 19 (Class B misdemeanor is a petty offense); *Lewis v. United States*, 518 U.S. 322, 326 (1996) (offenses with maximum prison terms of six months or less are presumptively petty offenses).

As Mr. Lesh points out, the text of the U.S. Constitution says that "[t]he trial of all crimes, except in cases of impeachment, shall be by jury," art. III, § 2, and that "[i]n all criminal prosecutions, the accused

shall enjoy the right to a speedy and public trial, by an impartial jury," amend. VI. (*See* Doc. 122 at 28.) He also provides an impressive array of authorities arguing that the Constitution's text should mean what it says, with sources ranging from the Declaration of Independence, to Alexander Hamilton's Federalist No. 83, to Justices Black and Douglas, to Professor Philip Hamburger. (Doc. 122 at 37-38.)

As a matter of first principles, this argument is not unpersuasive. "Constitutional analysis must begin with 'the language of the instrument,'" and "all" is not a term generally considered to contain much ambiguity. *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2244-45 (2022) (quoting *Gibbons v. Ogden*, 9 Wheat. 1, 186-89 (1824)). The Supreme Court has in fact recently said, "Only a jury, acting on proof beyond a reasonable doubt, may take a person's liberty." *United States v. Haymond*, 139 S. Ct. 2369, 2373 (2019). But here in an inferior court, first principles must yield to binding precedent, and "the Supreme Court has long held that 'there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision.'" *United States v. Luppi*, 188 F.3d 520, 1999 WL 535295, at *6 (10th Cir. 1999) (unpublished table decision) (quoting *Duncan v. Louisiana*, 391 U.S. 145, 159 (1968)). "Even where a defendant is charged with multiple petty offenses which, taken cumulatively, could result in a sentence longer than six months, the Sixth Amendment right to a jury trial does not apply." *Id.* (citing *Lewis*, 518 U.S. at 330).

Given that binding precedent, whether, as Mr. Lesh argues, it is "impossible" (or necessary) "to square the Supreme Court's line of cases denying the right to trial by jury in petty offense prosecutions with Founding-era writings" is not for me to say. *See Dobbs*, 142 S. Ct. at 2262 ("An erroneous constitutional decision can be fixed by amending the Constitution, but our Constitution is notoriously hard to amend.

Therefore, in appropriate circumstances [the Supreme Court] must be willing to reconsider and, if necessary, overrule constitutional decisions." (citations omitted)). I am required to apply those cases, as was Judge Gallagher. Neither of us can reverse the convictions on that basis.

## II. The evidence was sufficient to convict Mr. Lesh.

Mr. Lesh argues that the Government failed to prove his guilt on each count beyond a reasonable doubt. His primary argument is that the Government did not produce sufficient evidence to convict him, but he also raises other contentions that the Government calls "ancillary."

### A. Mr. Lesh's general sufficiency-of-the evidence arguments

Mr. Lesh's sufficiency-of-the-evidence arguments can be dismissed quickly. Appellate review on this basis is "highly deferential." *United States v. Burtrum*, 21 F.4th 680, 685-86 (10th Cir. 2021). The relevant question is not whether I believe the evidence establishes guilt beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 316 (1979) (holding that the requirement to prove criminal guilt beyond a reasonable doubt is an essential feature of due process). It is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact" could do so. *Id.* at 319; *see also Fernandez*, 24 F.4th at 1326 (reversal permissible "only when no reasonable [finder of fact] could find the defendant guilty beyond a reasonable doubt").

#### 1. Operating a snowmobile off a designated route in violation of 36 C.F.R. § 261.14

To support his conclusion that Mr. Lesh had operated a snowmobile off a designated route, Judge Gallagher pointed to (1) "photographs showing snowmobile track marks in the snow . . . taken on the morning of April 25, 2020," (2) "testimony that resort employees were neither

- 6 -

using nor had access to snowmobiles during the time that the resort was closed," (3) a *New Yorker* magazine article quoting Mr. Lesh as saying "[h]ere I am—or supposedly me—with one misdemeanor, in a terrain park," and (4) Mr. Lesh's comment on a podcast that "nothing that he [the author of the article] said was untrue or unfair" (brackets in original). (Doc. 90 at 7-8.)

This is plenty.[3] Mr. Lesh points out a variety of other theories of what might have been depicted in the photo he posted: he had posted photos of friends snowmobiling in the past; he posted it not because it was actually him but "to irritate the Government"; it might have been taken a month earlier; etc. (*See* Doc. 122 at 11-13.) But those interpretations, while also perhaps plausible, did not persuade the factfinder here. The existence of other possible explanations for the photograph does not make the factfinder's conclusion—that it was a photo of Mr. Lesh taken while the park was closed—unreasonable. The evidence is therefore sufficient as a matter of law.

While Mr. Lesh is right that the snowmobile operator is unidentifiable in the photograph and nobody testified that it was him, inferring that it was Mr. Lesh was "within the bounds of reason." *United States v. Triana*, 477 F.3d 1189, 1195 (10th Cir. 2007). Mr. Lesh's own public post more than suggests that he was the one taking advantage of Keystone's closure to get in a "solid sesh." (*See* Doc. 125-1 at 2.) His apparent affirmation of a magazine article explicitly saying the photos were "of him" only adds to the weight of the evidence. (*See* Doc. 90 at 8.) Making that determination was therefore up to the factfinder, and his weighing of the evidence is not grounds for reversal.

---

[3] Judge Gallagher also described a number of other factual findings that support this conclusion. (*See* Doc. 90 at 3-6.)

Mr. Lesh also argues that the Government failed to prove one of the elements of its case: that it had designated certain trails for over-snow vehicle use. (Doc. 122 at 13.) If the National Forest Service designates certain areas for over-snow vehicle use, it is forbidden to operate over-snow vehicles in non-designated areas. 36 C.F.R. § 261.14. But the designation had been "identified on an over-snow vehicle use map," of which Judge Gallagher properly took judicial notice. *See* Fed. R. Evid. 201(b); *United States v. Burch*, 169 F.3d 666, 672 (10th Cir. 1999).

### 2. Conducting work activities in violation of 36 C.F.R. § 261.10(c)

Mr. Lesh's main challenge to the sufficiency of the evidence for his second conviction, under Section 261.10(c), is the same as for his first count: that the Government didn't prove Mr. Lesh was the one jumping the snowmobile. As explained above, however, the Government introduced sufficient evidence to permit that inference.

Mr. Lesh alternatively argues that even if it is him snowmobiling, snowmobiling is not "work activity." (Doc. 122 at 14.) "Section 261.10(c) prohibits . . . (1) conducting any kind of work activity or service; (2) on lands encompassed by the regulation; (3) without a special use authorization." *United States v. Parker*, 761 F.3d 986, 993 (9th Cir. 2014) (internal quotation marks omitted). Photography can be work activity if it is conducted for commercial purposes. *See United States v. Patzer*, 15 F.3d 934 (10th Cir. 1993) (upholding a conviction for photographing a hunting trip). Here, a reasonable trier of fact could conclude that the driving purpose of the snowmobiling session and its attendant photography was to promote Mr. Lesh's outdoor apparel company through social media. (*See, e.g.*, Doc. 90 at 11; Doc. 89 at 122-23; Doc. 125-1 at 9-24 (describing the use of social media to generate publicity for Mr. Lesh's company).) Mr. Lesh himself asserted that sales increased by thirty

percent in the wake of these controversies. (Doc. 89 at 108, 183, 190.) Snowmobiling is not inherently "work activity," but generating marketing materials is plainly in that category.

### B. Mr. Lesh's Other Arguments

Mr. Lesh raises a number of other arguments under the sufficiency-of-the-evidence rubric, although most are more properly considered on their own.

#### 1. The *New Yorker* article

Mr. Lesh contends the evidence was insufficient to convict him because Judge Gallagher improperly admitted into evidence and relied on statements made in the *New Yorker* magazine. The Government points out, however, that it is well established that a court reviewing the sufficiency of evidence must "consider all evidence admitted at trial, *even if admitted improperly.*" *Davis v. Workman*, 695 F.3d 1060, 1078-79 (10th Cir. 2012) (emphasis added). Mr. Lesh says that "the judicial system does not work this way," but the cases say otherwise. (Doc. 137 at 6.) To win an appeal based on insufficiency of the evidence, an appellant has to show that the evidence admitted was insufficient, not that it was wrongly admitted. *See Davis*, 695 F.3d at 1078-1079; *Fernandez*, 24 F.4th at 1327. This does not, as Mr. Lesh asserts, mean that "evidentiary rulings in bench trials lie beyond the reach of any meaningful appellate review." (Doc. 137 at 6-7.) It simply means that arguments about improperly admitted evidence are reviewed under their own rules and doctrines, not as part of a sufficiency-of-the-evidence dispute. Indeed, Mr. Lesh makes just such an argument here, and it is given full, meaningful appellate review in Section III below.

### 2. Constitutional arguments

Also under the broad theme of his sufficiency-of-the-evidence challenge, Mr. Lesh raises three constitutional arguments that the Government calls "ancillary" and argues have not been preserved for appeal. (*See* Doc. 131 at 18.)

### a. Non-delegation

Mr. Lesh argues that the Government's interpretation of the underlying statute violates the non-delegation clause. The statute, 7 U.S.C. § 1011(f), authorizes the Secretary of Agriculture "[t]o make such rules and regulations as he deems necessary to prevent trespasses and otherwise regulate the use and occupancy of property" held by the Department of Agriculture. Mr. Lesh argues that construing Section 1011(f) to permit the Agriculture Department to prevent posting photos on social media—conduct that occurs after a defendant has left federal lands—violates the non-delegation doctrine, since such an interpretation would have no intelligible limitation on the Agriculture Department's authority. (Doc. 122 at 24-25.) His trial counsel preserved this argument for appeal by raising a similar version in a motion to dismiss. (Doc. 67 at 4) ("The language central to this legislative delegation—to 'regulate the use and occupancy of property'—is alarmingly vague and would appear to authorize nearly any criminal law the Department of Agriculture felt like issuing with respect to federal land.").) This argument mischaracterizes the offense for which Mr. Lesh was convicted, however, which was taking photos on National Forest lands, as opposed to posting them on social media after he had left. (Doc. 90 at 12); *see supra* Part II(a)(2).

### b. First Amendment

Mr. Lesh argues that Judge Gallagher's interpretation of 36 C.F.R. § 261.14 "cannot be squared with Appellant's constitutional rights to free speech and expression and to due process." (Doc. 122 at 17.) He notes that the First Amendment protects his "right to doctor photos and post them to social media for artistic purposes, to stir up controversy, or for no reason at all," even if the photos "appear to depict a violation of a USFS regulation." (*Id.*) He contends that "[i]f this Court permits the prosecution (and persecution) of Appellant for posting what even the Government and its witnesses acknowledged was probably a photoshopped image, then artists, social media influencers, advertisers, and any number of people could find themselves facing criminal charges for publicizing provocative material." (*Id.* at 18.) The Government contends that this argument was waived, but Mr. Lesh's counsel did argue, in summation, that "[t]here are First Amendment concerns with" setting a "precedent whereby influencers in social media . . . simply do a post that doesn't even reference their business, that has nothing to do with their business, that still can trigger federal prosecution and a federal offense." (Doc. 89 at 237.)

Assuming this is sufficient to preserve the issue, it does not change the outcome. Judge Gallagher found that "Defendant's still photography at the Keystone resort was a commercial use or activity, [so] he was required to seek special-use authorization." (Doc. 90 at 12.) While Mr. Lesh is right that the First Amendment protects his ability to "depict a violation of a USFS regulation," his right to freedom of expression does not immunize him from criminal liability for the underlying conduct that he is depicting. (Doc. 122 at 17.) Even Mr. Lesh concedes that "a person may be convicted for unlawful conduct captured in a photograph only insofar as that photograph provides proof that the person

engaged in said conduct." (*Id.* at 18.) Mr. Lesh's photographs—some of which were doctored—provided proof that he had conducted commercial activity on National Forest lands.

### c. Due process

Mr. Lesh argues that he received insufficient notice that a regulation prohibiting commercial activity on National Forest Service lands prohibited the operation of a snowmobile. (Doc. 122 at 27 ("Appellant could not have anticipated that a regulation prohibiting the *sale of merchandise* or *conducting work activity on federal* land would be used to prosecute him for posting a photograph on social media depicting an unidentifiable individual engaged in recreational snowmobiling.").) Mr. Lesh's trial counsel preserved this argument in his summation. (Doc. 89 at 238 ("[T]hat appears to prohibit me going to Keystone and setting up a stand and offering for sale some gloves, and saying, Hey, buy these gloves. That's what it appears to prohibit.").)

The Due Process Clause "bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Muskett*, 970 F.3d 1233, 1243 (10th Cir. 2020). The question is not whether a criminal defendant has previously been convicted for identical behavior, but whether "the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Id.* The relevant regulation, 36 C.F.R. § 261.10(c), prohibits "conducting any kind of work activity or service unless authorized by Federal law, regulation, or special-use authorization." It was reasonably clear from this regulation that taking photographs to promote a clothing line, which is unquestionably work activity,

would have been prohibited on National Forest lands without authorization.

### III. Judge Gallagher did not err by considering the *New Yorker* article.

Mr. Lesh argues that Judge Gallagher committed reversible error by admitting the *New Yorker* article about Mr. Lesh as evidence. (Doc. 122 at 28-32.) Mr. Lesh argues that (1) the article is inadmissible hearsay, *see* Fed. R. Evid. 802, and (2) the article contains inadmissible evidence of other past crimes, wrongs, or acts, *see* Fed. R. Evid. 404(b).

#### A. Hearsay

Judge Gallagher concluded that "the Defendant's statements within the article and podcast were not inadmissible hearsay under Federal Rule of Evidence 801(d)(2)(B)." (Doc. 90 at 8-9.) That rule permits admission of a statement that "is offered against an opposing party and is one the party manifested that it adopted or believed to be true." Fed. R. Evid. 801(d)(2)(B). The statements by Mr. Lesh in the *New Yorker* article were unquestionably attributable to him and offered by his opponents. (Doc. 90 at 8-9.) Judge Gallagher found that Mr. Lesh had manifested that he believed the statements to be true by "verbally confirm[ing on a podcast] that nothing written by the [*New Yorker*] author was 'untrue or unfair'" and "not contend[ing] that the author had misquoted him or improperly insinuated that Defendant was the individual operating the snowmobile in the Keystone Resort." (*Id.* at 9.)

Mr. Lesh argues his podcast endorsement may not have been "carefully analyzed" and that some of the *New Yorker* statements that Judge Gallagher admitted into the record were made by the journalist, rather than Mr. Lesh. (Doc. 122 at 30-31.) Perhaps, but Rule 801(d)(2)(B)

- 13 -

allowed Judge Gallagher to admit statements in the *New Yorker* article that were by the journalist, in addition to those attributed to Mr. Lesh, since Mr. Lesh had adopted them by asserting that the article was accurate. Fed. R. Evid. 801(d)(2)(B); *see* (Doc. 90 at 9). Admission of evidence is reviewed "for abuse of discretion." *United States v. Hamilton*, 413 F.3d 1138, 1142 (10th Cir. 2005). "Because . . . hearsay determinations are particularly fact and case specific . . . review of those decisions is especially deferential." *Id.* Judge Gallagher did not abuse his discretion in admitting the *New Yorker* article based on Mr. Lesh's admission, even if that admission may not have been "carefully analyzed."

### B. Other Crimes, Wrongs, or Acts

Federal Rule of Evidence 404(b) prevents courts from admitting evidence of a past acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Trial courts are entitled to "broad discretion" in Rule 404(b) determinations and will only be overruled if a decision "exceeded the bounds of permissible choice in the circumstances or was arbitrary, capricious, or whimsical." *United States v. Cushing*, 10 F.4th 1055, 1075 (10th Cir. 2021).

The *New Yorker* article meets the Tenth Circuit's four criteria for admission of evidence in accordance with Rule 404(b). *See United States v. Lazcano-Villalobos*, 175 F.3d 838, 846 (10th Cir. 1999). First, the article was admitted for a proper purpose that Judge Gallagher identified. (Doc. 89 at 87 ("The purpose of this argument is for statements of the defendant. The Court is fully competent of reviewing this article and looking at it only for the statement of the defendant and not as to his opinions on matters aside from this.").) It is apparent that Mr. Lesh's statements in the article were relevant to show intent, plan, and

knowledge (*see, e.g.*, Doc. 125-1 at 16 ("Here I am—or supposedly me—with one misdemeanor, in a terrain park."); *id.* at 17 ("It was an opportunity to reach a whole new group of people—while really solidifying the customer base we already had.")), and that Judge Gallagher did not use the article's mention of other past acts of Mr. Lesh to prove character, as prohibited by Rule 404(b). Second, the article was relevant to the case. Third, Judge Gallagher determined that the article's probative value was not substantially outweighed by its potential for unfair prejudice. (*See* Doc. 89 at 87-88.) Finally, while there was no jury to receive a limiting instruction, Judge Gallagher stated that he would not consider the portions of the article that discussed other past acts. (*Id.*) Judge Gallagher did not abuse his discretion under Rule 404(b) by admitting the article.

## IV. Judge Gallagher did not err by admitting evidence relating to Hanging Lake and Maroon Lake.

Mr. Lesh argues that Judge Gallagher's decision to admit (1) evidence that he had been charged with offenses related to his supposed trespass of Hanging Lake in June of 2020, and (2) a photograph depicting Mr. Lesh appearing to defecate in Maroon Lake violated Federal Rules of Evidence 403 and 404(b). (Doc. 122 at 32-36.) Judge Gallagher admitted the Hanging Lake and Maroon Lake evidence as *res gestae*, so the admission was not forbidden by Rule 404(b). (Doc. 89 at 7); *see United States v. Kravchuk*, 335 F.3d 1147, 1155 (10th Cir. 2003). Admission of this evidence was otherwise relevant and therefore entitled to deference.

## CONCLUSION

It is **ORDERED** that David Lesh's convictions are **AFFIRMED**.

DATED: March 10, 2023

BY THE COURT:

_____
Daniel D. Domenico
United States District Judge